**STATE of Delaware**

v.

**Christine MUNDEN, Defendant.**

**Nos. N–03–08–3051, N–03–08–3052.**

Superior Court of Delaware,
New Castle County.

Submitted: June 3, 2005.
Decided: Aug. 25, 2005.
Revised: Aug. 26, 2005.

Danielle J. Brennan, Esquire, Deputy Attorney General, Department of Justice, of Wilmington, Delaware, for State of Delaware.

Louis B. Ferrara, Esquire, of Ferrara, Haley, & Bevis, of Wilmington, Delaware, for defendant.

HERLIHY, Judge.

The State has appealed a decision of the Court of Common Pleas dismissing a driving under the influence (DUI) charge against Christine Munden. The trial court dismissed the charge because the State Chemist was not present to testify, as requested of the State by the defense.

The evidence of Munden's blood alcohol content was to come from an intoxilyzer reading not a blood test. The statutes regarding admissibility of results of alcohol content taken from blood samples provide the defendant may request the presence at trial of the State Chemist. The Court of Common Pleas has apparently ruled in such situations that if the State Chemist is not present when requested, the blood test results are inadmissable.

Munden, however, sought to extend that ruling to intoxilyzer cases. Even though the prosecutor told the trial court that her case was not a blood test case, the court, nevertheless, dismissed the charges. She also claimed there was a deal to plea to a lesser charge, but the State disputed that then and now.

One issue presented is whether the State Chemist is a necessary witness in an intoxilyzer case. Also, even though the

defense requested his presence in this case, was it erroneous, nevertheless, for the trial court to dismiss the charge because the chemist was not there? Additionally, was there an "enforceable" plea agreement to a lesser offense in the circumstances presented below?

The Court holds that the State Chemist is not a necessary witness for the introduction of intoxilyzer results. Further, since his presence was not necessary, it was erroneous to dismiss the DUI charge because of his absence even though his presence was requested. As there was no detrimental reliance involving the alleged plea to a reduced charge, there is no plea offer to enforce. The matter is **REVERSED** and **REMANDED**.

### *Procedural History*

After the State appealed, Munden moved to dismiss for lack of jurisdiction. She claimed the State had failed to adhere to certain steps needed to perfect the appeal. In an earlier opinion, this Court ruled that the State had done what was required to perfect the appeal. It denied her motion to dismiss.[1]

### *Factual Background*

Munden was charged with DUI[2] on June 13, 2003. She was administered an intoxilyzer test, not a blood test. Through counsel, she removed her case to Common Pleas. Munden's counsel sent a letter to the State on August 13, 2003.[3] Trial was scheduled on July 14, 2004. Before the trial started the following exchange occurred:

1. *State v. Munden,* 2005 WL 1654031 (Del.Super.).

2. 21 *Del.C.* § 4177(a).

3. The letter is not in the record before the Court. The State has not indicated that it did

Counsel: Your Honor, I have suggested that, to the State that there's a possibly dispositive position that I have that could, could help us resolve this case. And since I have more familiarity with Your Honor than the State does, I think, I think they're allowing me to make this presentation to Your Honor.

I suggested we do it now, rather than hear a couple of hours worth of testimony.

Court: All right.

Counsel: And, and here's my position. And I think Your Honor's determination of this may convince the State that was can resolve this by a, by a, in a fashion.

August the 18th of 2003, I made a request for the presence of the chemist, for them to get the test in. They're not going to have him here. I've advised them that Your Honor, or at least I'm familiar with the fact that Your Honor has previously ruled, if I make that request and they don't have the chemist, you will not allow the test.

Court: Right.

Counsel: If, without a test, I think this case has got some potential to, to do something, but I need you to confirm whether I'm right about that.

Court: You are correct.

DAG: Your Honor, there isn't, there was no blood drawn from the defendant; it was solely the Intoxilyzer. The State does have records that the Intoxilyzer machine was properly

not get the letter. The Court will, nevertheless, accept counsel's representation that a letter was sent to the State requesting the State Chemist's presence at trial, citing several statutes. The defendant quotes from portions of that letter in her briefing in this Court

working given the tests performed both before and after the defendant used it.

Counsel: Your Honor, I appreciate that's the same argument they made earlier, and Your Honor said, no chemist, no test, and, and . . .

Court: Right.[4]

Munden's counsel then represented to the trial court that there was a reckless driving plea saying, ". . . absolutely represent to the Court this is a done deal." [5] No prosecutor said it was, however, and no plea was entered. And before anything further happened, a second prosecutor appeared and indicated the State would be appealing the dismissal. Munden argued there was nothing to appeal because of the supposed plea agreement. The discussion which followed involved the dismissal and appeal, and, of course, no plea was entered.

### Standard of Review

 When this Court reviews an appeal from the Court of Common Pleas, the decision is reviewed as the Supreme Court would consider an appeal from this Court.[6] The standard of review for appeals from the Court of Common Pleas to the Superior Court is *de novo* for legal determinations and " "clearly erroneous" " for findings of fact.[7]

 The facts are not at issue in this case so it was not necessary for the trial court to make factual findings.[8] This Court is to review the trial court's decision to admit or exclude otherwise legal evidence for an abuse of discretion.[9]

### Discussion

 The legal basis for the trial court's exclusion of the intoxilyzer results is somewhat unclear. The reasons appear to be: (1) to admit the intoxilyzer test results the State must produce at trial the State Chemist if requested by the defense; (2) the defense had made such a request in this case; (3) the State Chemist was not present on the trial date; and (4) the trial court had ruled previously, that without the chemist's presence, the intoxilyzer results would be inadmissable. Munden, however, has not presented to this Court any opinion or bench ruling prior to this case from the Court of Common Pleas excluding the intoxilyzer results when the State Chemist did not appear at trial. Her counsel merely stated that previously the court had ruled: no Chemist, no test. The trial judge merely said, "Right."

What this Court does not know is whether such a prior ruling involved a case where the State sought to introduce the blood alcohol content (BAC) obtained through a blood test or an intoxilyzer test. As the discussion which follows demonstrates, the two are not the same and indicate where there was an error of law and/or an abuse of discretion.

While the pre-trial letter to the State is not in the record, Munden refers to a portion of it on her brief:

"Please consider this letter a request pursuant to 21 *Del.C.* § 4177(4)(sic) for the presence of the Forensic, Toxicologist, Forensic Chemist, State Police Forensic Analytical Chemist, and any other

4. Transcript pp 2–3.

5. Transcript p. 3.

6. *Fiori v. State,* 2004 WL 1284205 (Del.Super.), at *1.

7. *State v. High,* 1995 WL 314494 (Del.Super.), at *2.

8. *State v. Lahman,* 1996 WL 190034 (Del.Super.), at *2.

9. *Kiser v. State,* 769 A.2d 736, 739 (Del.2001).

person in the chain of custody as a witness in the proceeding." [10]

The statute to which Munden referred in the latter is 21 *Del.C.* § 4177(h) which reads:

(1) For the purposes of introducing evidence of a person's alcohol concentration pursuant to this section, a report signed by the Forensic Toxologist, Forensic Chemist, or State Police Forensic Analytical Chemist who performed the test or tests as to its nature is prima facie evidence, without the necessity of the Forensic Toxologist, Forensic Chemist or State Police Forensic Analytical Chemist personally appearing in court:

 a. That the blood delivered was properly tested under procedures approved by the Forensic Sciences Laboratory, Office of the Chief Medical Examiner, or the Delaware State Police Crime Laboratory;

 b. That those procedures are legally reliable;

 c. That the blood was delivered by the officer or persons stated in the report; and

 d. That the blood contained the alcohol therein stated.

(2) Any report introduced under paragraph (1) of this subsection must:

 a. Identify the Forensic Toxologist, Forensic Chemist or State Police Forensic Analytical Chemist as an individual certified by the Delaware State Police Crime Laboratory or any county or municipal police department employing scientific analysis of blood, as qualified under standards approved by the Forensic Sciences laboratory, office of the Chief Medical Examiner or the Delaware State Police Crime Laboratory to analyze the blood;

 b. State that the person made an analysis of the blood under the procedures approved by the Forensic Sciences Laboratory, Office of the Chief Medical Examiner or the Delaware State Police Crime Laboratory; and

 c. State that the blood, in that person's opinion, contains the resulting alcohol concentration within the meaning of this section.

Nothing in this subsection precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in the report entered pursuant to paragraphs (1) and (2) of this subsection.

(3) For purposes of establishing the chain of physical custody or control of evidence defined in this section which is necessary to admit such evidence in any proceeding, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery stated, without the necessity of a personal appearance in court by the person signing the statement, in accordance with the same procedures outlined in § 4331(3) of Title 10.

(4) In a criminal proceeding, the prosecution shall, upon written demand of

---

**10.** Munden Brief p. 2. The (sic) is in her brief. It is there because she left out the subsection

(h) before the (4).

the defendant filed in the proceedings at least 15 days prior to the trial, require the presence of the Forensic Toxologist, Forensic Chemist, State Police Forensic Analytical Chemist, or any person necessary to establish the chain of custody as a witness in the proceeding. The chain of custody or control of evidence defined in this section is established when there is evidence sufficient to eliminate any reasonable probability that such evidence has been tampered with, altered, or misidentified.

The record in this case shows that Munden received a summons for DUI (which probably memorializes an arrest). The summons has three potential boxes of test types to check: intoxilyzer, blood, or urine. If an intoxilyzer is used, the test number is to be written in. The intoxilyzer box was checked and a test number written in. The test result, not relevant to the issues presented currently, is also written in. The traffic summons and counsel's letter to Justice of the Peace Court 15 invoking her right to have a trial in Common Pleas were part of the record forwarded to Common Pleas and, of course, were available to counsel.

Therefore, Munden's counsel was aware or should have been aware from the summons alone that there was no blood test. The summons itself even has a box to check if there were a blood test, and in this case, obviously, it was not checked. One would also naturally assume that Munden herself knew there was no blood sample taken to be tested.

■ All of this is important because counsel's form letter to the State and the

statute he invokes relate to blood test results not intoxilyzer results. In her brief, Munden states she invoked 10 *Del.C.* § 4332 as a basis for having the State Chemist at trial.

Reliance on that statute is misplaced. Section 4332 must be read as part of Subchapter III "Chain of Custody" and particularly § 4330 which states:

For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a *particular* controlled substance defined under Chapter 47 of Title 16.... [11]

Munden was not charged with anything involving a controlled substance. The alcohol she was charged with having in her system is not a controlled substance as defined in Chapter 47, Title 16. The provisions of § 4332 must be read in *pari materia*[12] with Sections 4330 and 4331. They all relate to chain of custody. They are inapplicable to a DUI proceeding involving alcohol. They cannot be invoked by the State or the defense in such a proceeding.

Munden's invocation of § 4332 was, therefore, irrelevant.

The analysis accordingly, returns to the role of § 4177(h) in this proceeding. As quoted above, it relates only to cases where a blood sample was drawn to test for the presence of alcohol in a DUI case. In such a case, § 4177(h)(4) gives the defense the right to demand the presence of "the Forensic Toxologist, Forensic Chemist, State Police Forensic Analytical Chemist, or any other person in the chain of custody as a witness in the proceeding." [13] These are the very words parroted in Munden's standard DUI pre-trial form let-

---

11. 10 *Del.C.* § 4330. (Emphasis added).

12. *Watson v. Burgan,* 610 A.2d 1364, 1368 (Del.1992).

13. 21 *Del.C.* § 4177(h)(4).

ter to the State. The incorrect use of the letter set this case on the wrong track.

The Court earlier noted that Munden had not cited to this Court any Court of Common Pleas decision applying § 4177(h)(4) to intoxilyzer cases. It is unclear whether counsel, when referring to earlier decision of no-chemist-no-test-result, had a momentary lapse in knowing Munden's was an intoxilyzer case. Or counsel could have, despite the prosecutor telling the trial court that this was an intoxilyzer case, mistakenly believed a prior blood test decision applied to an intoxilyzer case; or worse.

In any event, in *State v. McGuire*, the only Court of Common Pleas decision cited to this Court, that court held that § 4177(h) did not apply to intoxilyzer cases and that the State Chemist was not involved in the claim of custody and as such was not a necessary witness.[14] In that sense alone, it is impossible to know to what precedent Munden was referring when she asked that this DUI charge be dismissed for the failure of the State to have the State Chemist there. Again, Munden has cited no authority supporting a role for § 4177(h) in an intoxilyzer case or for excluding the intoxilyzer test result if the State Chemist were absent.

The *McGuire* decision is correct. The State Chemist is not needed in a DUI case involving an intoxilyzer test result.

Section 4177 uses the word "breath" ten times. Five of those times, it is listed with blood and urine.[15] Section 4177(c) describes the meaning of alcohol concentra-tion as the "amount of alcohol in a sample of a person's breath equivalent to .08 or more grams per two hundred liters of breath."[16] "Breath" is used twice more in the definition of alcohol concentration of .16 or more at § 4177(c)(6)(b). It is also in § 4177(g)(1) when the code section discusses the preliminary testing at the scene of the stop of other initial encounter.

Subsections a, b, and c, of § 4177(h)(2) mention only blood. This is the evidence defined in subsection(h). The legislature could have included the word "breath" as done earlier in the subsection if it so desired. The Court can only infer that the legislature deliberately omitted the word "breath" in § 4177(h).

■ Section 4177(h)(4) requires the presence of any person necessary to establish the chain of custody upon demand. Chain of custody relates to "evidence defined in this section."[17] Evidence in § 4177(h) is blood sample evidence.[18] The Court finds that the legislature intentionally omitted inclusion of the words breath and urine in this section. In interpreting a statute, the Court's role is to determine and give effect to the legislature's intent.[19] Where a statute is unambiguous and there is no reasonable doubt as to its meaning, the Court must give effect to its literal meaning.[20] Section 4177(h) is clear; it refers only to DUI cases where a blood sample was drawn.

■ There is sound reason for this distinction between blood test and intoxilyzer tests. It has been law in the State for years that, with proper foundation, the

---

14. *State v. McGuire*, 2000 WL 33654089 (Del. Ct. Com Pl.).

15. 21 *Del.C.* § 4177(c)(2), (g), and (g)(2).

16. 21 *Del.C.* § 4177(c)(1)b.

17. 21 *Del.C.* § 4177(h)(4).

18. 21 *Del.C.* § 4177(h)(1).

19. *Richardson v. Wile*, 535 A.2d 1346, 1348 (Del.1988).

20. *Zimmerman v. State*, 628 A.2d 62, 68 (Del. 1993).

results of an intoxilyzer test are admissible at trial without the State Chemist being present to testify about his or her calibration tests.[21] The intoxilyzer (5000) used in the case is scientifically acceptable as a means of measuring BAC.[22] The State Chemist does not perform the test on the driver but certifies the machine as working properly before and after the test.[23] And there is no requirement that the chemist personally verify its accuracy at trial.[24]

The *Best* case predates the enactment of § 4177(h) and 10 *Del.C.* § 4330–32.[25] The legislature is presumed to be aware of that decision.[26] This readily explains why § 4177(h) mentions only blood tests, why the procedure in subsection (h) applies only to blood tests and while other parts of § 4177 mention breath tests. Further, chain of custody can be an issue unique to blood sample cases unlike intoxilyzer cases.

If there is a decision from the Court of Common Pleas prior to this case, as Munden argued below but not here, holding an intoxilyzer test result is inadmissable based on the State Chemist's absence alone, it is wrong as a matter of law. The

only known prior decision from Common Pleas is *McGuire* and it, as the discussion in this opinion shows, was correct. If the trial court in this case excluded the intoxilyzer results based on the absence of the State Chemist and either § 4177(h) or 10 *Del.C.* § 4332, or both, that would be wrong, too, as a matter of law.

But the brief exchange between Munden's counsel and the trial court, as previously noted, is not clear about the no-chemist-no-test ruling. Counsel said he sent the letter, as discussed. But the letter is legally meaningless and misplaced. It is a form letter clearly designed for blood test cases. Since the statutes upon which the letter was based are inapplicable to the production of the State Chemist in intoxilyzer cases, it cannot serve as a basis for requiring the State to have the Chemist there. Nor does Common Pleas Criminal Rule 16 require the State, even on a defense request, to have the Chemist there.[27]

It would appear that the trial court was acting under a misapprehension of precedent or the role of the letter and

**21.** *Best v. State*, 328 A.2d 141, 143 (Del.1974).

**22.** *Clawson v. State*, 867 A.2d 187, 192 (Del. 2005).

**23.** *State v. McCabe*, 1995 WL 562130 (Del.Super.) at *2.

**24.** *Saxton v. Voshell*, 1991 WL 53455 (Del.Super.) at *4.

**25.** Section 4177(h) was enacted on July 8, 1994. It, too as the current version, referred to chain of custody in 10 *Del.C.* § 4331. That section was enacted on May 31, 1994 as part of §§ 4330–4332, 69 Del. Laws C. 237. The cross reference in § 4177(h) to § 4331 show the legislature clearly meant the procedures in (h) to apply only to test results when blood was drawn and where the charge was driving under the influence of drugs. When re-enacted in May 1995 (at that time it was subsection

(g) not (h)) the same interrelationship was retained.

**26.** *State v. 0.0673 Acres of Land*, 224 A.2d 598, 602 (Del.Supr.1966).

**27.** Rule 16. Discovery and Inspection.

(a) *Disclosure of evidence by the State.* (1) Information subject to disclosure.
(D) Reports of examination and tests. Upon request of a defendant the State shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the State, and which are material to the preparation of the defense or are intended for use by the State as evidence in chief at the trial.

§ 4177(h). That misapprehension was potentially induced by counsel who may have thought there was some precedent applicable in an intoxilyzer case.

In a sense, therefore, there was an evidentiary ruling which in most circumstances is reviewed on a basis of abuse of discretion. But if the ruling were based on the misapplication of a statute or statutes, it is reviewed *de novo*. The *de novo* review above shows the incorrectness of the ruling. The trial court was informed that Munden's was an intoxilyzer case, nevertheless, the result was going to be barred. That implies the ruling was on a legal basis not discretionary basis.

No matter what that basis was, however, it was wrong as a matter of law or an abuse of discretion. The statute does not apply; the State Chemist was not a necessary witness; the defendant's pre-trial demand was a nullity; and the demand to have the Chemist present is inapplicable to intoxilyzer cases. The defense always has the right in an intoxilyzer case to subpoena the State Chemist, if it chooses.[28]

The chemist's absence, *per se*, does not appear to have been the reason for barring the test results. Nor is this a situation where the record shows the trial court ruled the result inadmissable for a discovery violation. Such a violation could only occur if there had been a blood sample drawn and the defendant properly invoked his or her rights under § 4177(h). But the request for the Chemist's presence was premised on the incorrect invocation of a statutory procedure that cannot be separated from the basis of why Munden requested the Chemist's presence. The defendant in an intoxilyzer case does not have any similar right to demand the Chemist's presence. Therefore, it would be an abuse of discretion to bar the test result because of the Chemist's absence unless, of course, there had been a defense subpoena.[29]

There was no ruling or defense argument in the trial court that, leaving the pre-trial demand aside, the Chemist's mere absence alone in an intoxilyzer case would render the result inadmissable.

The end result is the same. The test result should not have been barred.

## II

Munden asserts that the State offered a plea bargain which she accepted. She contends that there was a detrimental reliance on the agreement. The only indications that this Court has that there was a plea bargain are the statements of her counsel at trial that he had a "done deal" with the State on a plea to reckless driving which he said Munden accepted.[30]

The first deputy present did not indicate any plea had been consummated or even offered. There is no response from her of any kind to that statement on the record. While the transcript is unclear whether or if there is a break between counsel's comments and the appearance of the second deputy who said the State would be appealing, there was no further discussion of the alleged plea. No plea, of course, was formally entered nor was one accepted by the Court.

The controlling precedent is *Shields v. State*:

"[T]he State may withdraw from a plea bargain agreement at anytime prior to,

---

28. See also, 10 *Del.C.* § 4332(b).

29. This statement should not be taken as an invitation for defendants to do so as the *Best* case is still good law. To allow this door to be opened would severely affect the State's ability to prosecute these serious charges.

30. Transcript at 4 and 7.

but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement." [31]

In *Shields* the defendant, originally charged with first degree murder, was offered and accepted a plea to second degree murder. The offer and acceptance were documented. Without explanation, the State withdrew the offer. Prior to plea negotiations, Shields had moved to (1) quash the indictment; (2) quash the murder first charge on a claim the statute was unconstitutional; and (3) to change venue. With this record, nevertheless, the court in *Shields* held that there was no enforceable plea and that the State could withdraw it.

The record in this case is far less compelling than that in *Shields*. Munden has made no showing of the detrimental reliance to the level cited required by *Shields*. In short, there was no plea agreement to enforce in the trial court or here. It also should be noted that Munden did not press the issue in the trial court, and that court does not appear to have been persuaded there was a plea bargain to enforce.

### *Conclusion*

For the reasons stated herein, the decision of the Court of Common Pleas is **REVERSED** and **REMANDED** for proceedings consistent herewith.

---

**31.** *Shields v. State,* 374 A.2d 816, 820 (Del. 1977).