Deron E. FARMER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 194, 1996.

Supreme Court of Delaware.

Submitted: July 14, 1997.
Decided: Aug. 21, 1997.
Rehearing Denied Sept. 22, 1997.

John S. Malik, Wilmington, for Appellant.

Kim E. Ayvazian and Sam Glasscock, III (argued), Deputy Attorneys General, Department of Justice, Georgetown, for Appellee.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

WALSH, Justice:

In this appeal from the Superior Court, the defendant-appellant, who was convicted of Attempted Murder First Degree and an associated weapons offense, raises two claims of error with respect to the trial court's admissions of evidence. He also contends he was convicted of a charge for which he was not indicted. We conclude that the trial judge erred in admitting into evidence a handgun that had no established nexus to the offense charged. Accordingly, we remand for a new trial.

I

The appellant, Deron E. Farmer ("Farmer"), was indicted on charges of Attempted Murder First Degree and Possession of a Firearm During the Commission of a Felony in violation of 11 Del.C. §§ 636, 1447A. The charges arose out of the July 15, 1994 shooting of Phillip Grundy ("Grundy"). According to the State's theory of the case, as it unfolded at trial, the shooting was the culmination of a series of violent confrontations between Farmer and Grundy.

The State's principal witness was Grundy, the victim of the shooting. He testified that he and Farmer had been casual acquaintances in high school but thereafter had little contact until one evening in July 1993. On that occasion, Grundy accompanied by a friend, entered an apartment building in Wilmington Manor where he confronted Farmer and four other individuals. Grundy testified that he observed Farmer point a .22 caliber gun, without a bullet clip, at Grundy's friend. Later Grundy engaged in a fight with one of Farmer's friends, during which Farmer struck Grundy in the face with the unloaded gun. Farmer's trial counsel lodged an objection and moved for a mistrial with respect to the evidence that Farmer had a gun during

the 1993 incident. Although the State intended to present testimony concerning the prior incident as evidence of the animosity between Farmer and Grundy, apparently it was surprised when Grundy testified that Farmer had a gun in his possession. After performing a Getz[1] analysis, the trial court ruled that the prejudicial effect of the gun testimony was not outweighed by its probative value. The trial court also gave an immediate instruction to the jury concerning the limitations of the gun testimony as required by Getz.

Grundy next testified that following the gun incident he had no further contact with Farmer until the night of the shooting, approximately one year later. On the evening of July 15, 1994, Grundy encountered Farmer outside a restaurant and, in retaliation for the Manor Park incident, Grundy "took a swing at him." A melee then broke out involving friends of both individuals. During the course of the fray, Farmer was hit in the head with a bottle.

Several hours later Grundy and a woman companion were walking along Revis Avenue when a vehicle pulled alongside them and a passenger exited. As the passenger retrieved an object from under the seat, Grundy and his companion fled. The gunman fired three shots, one of which struck Grundy in the back. Although Grundy was smoking marijuana at the time and originally refused to make a statement to the police, he ultimately identified the shooter as Farmer. Grundy's companion described the gunman as having a full beard and wearing shorts—a description that fit one of the individuals allegedly in the vehicle with Farmer. According to police reports the gun used by the assailant was described as a "dark or black automatic." Grundy's injuries were life-threatening but he recovered following surgery.

A police investigation of the shooting ultimately led to Farmer. During a search of Farmer's apartment, five days after the shooting, the police found a .32 caliber automatic pistol, silver in color. The police were unable to determine the caliber of the weap-

1. Getz v. State, Del.Super., 538 A.2d 726, 734 (1988) prescribes the framework for the analysis that a trial judge must perform when presented with evidence of a defendant's prior bad acts under D.R.E. 404(b).

on used in the shooting since the bullet had passed completely thoroughly Grundy's body and no projectile was recovered. Nor were any shell casings found at the scene, although police found a .45 caliber casing some distance from the place of the shooting. No tests were performed to see if the gun recovered from Farmer's apartment had been recently fired and the only evidence offered by the State to suggest that a small caliber weapon had been used in the shooting, was the testimony of a police officer who noted the size of the entrance and exit holes in Grundy's shirt.

At trial, Farmer made a motion *in limine* to exclude references to the gun seized from his apartment. The State conceded that it could not link the gun in question with the shooting but argued that "the seized handgun was highly relevant to show that Farmer had access to a weapon which could have been used in the commission of the offense" and "to demonstrate Farmer's identity as the assailant." Farmer argued that since the State had failed to establish an evidentiary basis for asserting that the gun seized was used in the shooting, the jury would be left to speculate about the significance of the testimony. The trial judge while noting that the gun's "probative value is not too strong" because the State's own witnesses described the gun used in the shooting as being of a different color, ruled that the objection went to weight not admissibility. Over Farmer's objection, the gun was admitted into evidence.

Farmer's defense at trial was one of alibi. He admitted to the confrontation with Grundy earlier that evening but claimed to have spent the balance of the evening with his girlfriend. His alibi was confirmed by his girlfriend although her testimony was not strong. Two individuals testified that they accompanied Farmer to the scene of the shooting but did not see him actually fire at Grundy.

Although Farmer was indicted on a charge of Possession of a Firearm During the Commission of a Felony, the trial judge during his instructions to the jury alternatively referred to the charge as Possession of a Deadly Weapon During the Commission of a Felony. No objection was taken to this inconsistency. The jury deliberated for six hours and advised the judge that they were deadlocked. They were advised to continue deliberations if they found it helpful. Twenty minutes later the jury returned verdicts of guilty on Attempted Murder First Degree and Possession of a Deadly Weapon During the Commission of a Felony.

## II

■ Farmer asserts as error: the admissibility of evidence that he used a gun during the Manor Park incident; admission of the gun seized from his apartment; and plain error in the court's instruction concerning the weapon's offense for which he was not indicted. We find it necessary, however, to posit our mandate of reversal on the second claim only since, in our view, it was error for the trial judge to permit the State to offer into evidence a gun that, concededly, it could not link to the shooting.

■ We examine a ruling of a trial judge admitting or excluding evidence on relevancy grounds under an abuse of discretion standard. *Hovington v. State*, Del.Supr., 616 A.2d 829 (1992). Delaware Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." D.R.E. 401. "Evidence which is not relevant is not admissible." D.R.E. 402. Here, counsel for Farmer tendered a specific and timely objection on the basis of relevancy to the State's effort to introduce evidence that a gun was seized from Farmer's apartment that could not be established as being the gun used in the shooting.

■ Generally speaking, relevancy is determined by examining the purpose for which evidence is offered. *Register v. Wilmington Medical Center*, Del.Supr. 377 A.2d 8, 10 (1977). That purpose must, in turn, accommodate the concepts of materiality, *i.e.* be of consequence to the action, and probative value, *i.e.*, advance the likelihood of the fact asserted. *Getz v. State*, Del.Supr., 538 A.2d at 731. In this case, the State's claimed purpose in offering evidence of the gun found in Farmer's apartment was to establish identity. This was a proper purpose provided the State could establish a nexus between the

particular gun seized and the shooting. It is not sufficient that the defendant have "a hand gun" available to him. Even if it be assumed that finding the gun five days after the shooting permitted the inference that Farmer had possession of the gun before the shooting, the State was unable to link the weapon to any crime. The State's evidence based on a non-expert's examination of bullet holes in a shirt might permit the inference that a small caliber gun was used in the shooting but similarity is not enough, the "nexus requirement" must also be satisfied as a predicate to admissibility. *Whitfield v. State,* Del.Supr., 524 A.2d 13 (1987).

■ Evidence that a defendant, charged with a shooting, had a firearm in his possession is surely probative if that firearm is tied to the criminal act. But without a satisfactory evidentiary link, such evidence carries the risk that the jury may associate mere ownership of a firearm with a disposition to use it. Speculation based on mere ownership of instruments adaptable for use in a crime subjects the defendant to the same risk that impermissible character or bad act evidence may pose—equating disposition with guilt. *State v. Onofrio,* Conn.Supr., 179 Conn. 23, 425 A.2d 560, 564 (1979); *Getz v. State,* 538 A.2d at 730.

■ The State contends that because Farmer did not base his objection on D.R.E. 403 (probative value substantially outweighed by prejudice) he cannot assert that claim on appeal. Evidence that is speculative, however, carries the potential for permitting the jury to draw unwarranted inferences. Where those inferences reflect adversely on the defendant by portraying him as having "a gun" available to him, without establishing that the gun was probably used in the shooting, admissibility is barred because speculation creates prejudice, even apart from the weighing process required by D.R.E. 403.

■ We conclude that it was an abuse of discretion for the trial judge to admit into evidence a gun that the State concededly could not link to the shooting in question and indeed varied in appearance from the gun described by the State's own witnesses. While there was other evidence linking Farmer to the shooting, the jury's initial deadlock suggests that this was a close case.

Accordingly, we cannot say with any confidence that the speculative evidence concerning the gun found in Farmer's apartment was not a factor in the jury's deliberations.

■ Although our determination that the trial court erred in the admission of the gun requires reversal of the conviction and the grant of a new trial, we make the following additional ruling to assist the trial court in the event of a retrial. We find no error in the admission of evidence concerning Farmer's use of an unloaded gun in his prior confrontation with Grundy. The use of a gun as a striking instrument on that occasion is relevant to the intensity of the previous encounter between the parties. With respect to the claim of error concerning the inconsistency between the indicted firearm charge and the jury's verdict of guilty on the weapons charge, the State apparently concedes that the trial court's instruction was in error. Whether or not the error is plain, we assume it will not be repeated in the event of a retrial.

REVERSED and REMANDED.