**Lamont KISER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 375, 1999.

Supreme Court of Delaware.

Submitted: Jan. 30, 2001.
Decided: April 9, 2001.

Lloyd A. Schmid, Jr., Esquire, Assistant Public Defender, Office of the Public Defender, Dover, Delaware, for Appellant.

John Williams, Esquire, Deputy Attorney General, Department of Justice, Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court En Banc.

WALSH, Justice:

In this appeal from the Superior Court, the Appellant/defendant-below, Lamont Kiser ("Kiser"), claims error with respect to the trial court's refusal to admit certain evidence of prior misidentifications of Kiser by law enforcement officials. Kiser also contends the trial court erred by refusing to permit his brother to be called as a witness for the purpose of demonstrating the resemblance between them. While we find no error in the refusal to permit Kiser's brother to offer limited testimony, we conclude that the trial judge erred in barring the evidence of prior misidentifications because that evidence was clearly relevant to the defense of mistaken identi-

ty asserted at trial. Accordingly, we remand for a new trial.

### I

In May and June 1997, the Delaware State Police Special Investigations Unit conducted an undercover investigation of an open air drug market in the Willow Grove area of Kent County, Delaware. The police received information that crack cocaine was being distributed along a dirt road in the vicinity of Route 10. In connection with the investigation, Delaware State Police Officers Dan Wright and Donald Boulerice made three undercover purchases of crack cocaine from an individual they identified as Kiser.[1] The officers encountered more than one individual on each occasion and the purchases were of short duration—approximately 35–40 seconds.

Following the purchases, the officers briefly reviewed more than 12 photographs of suspected drug dealers in the Willow Grove area[2] in an effort to match the known dealers with the persons the officers encountered. These photographs included a picture of Kiser and two pictures of his brother, Donald Kiser. Using these photographs, the officers identified Kiser as the individual from whom they had purchased drugs on three occasions. Prior to these alleged encounters, the officers had never had any contact with Kiser. Upon learning of outstanding warrants issued in his name for his alleged involvement in the Willow Grove drug market, Kiser turned himself in to the Delaware State Police. Kiser was charged with three counts of Delivery of a Controlled Substance and

one count of Conspiracy. Following a jury trial, Kiser was found guilty of all the charges.

At trial, Kiser's sole defense was mistaken identity. The core of Kiser's defense was that it was common for law enforcement officials to mistake him for one of his family members. To support this claim, Kiser sought to present evidence that he was mistaken for one of his cousins or brothers on at least three occasions in the last ten years. The proffered evidence was in the form of testimony of his mother, Goldie Charlotte ("Charlotte") and a Superior Court bailiff, Joseph Sanchez ("Sanchez"). In addition, Kiser attempted to call as a witness his brother, Donald Kiser, to demonstrate the resemblance between the two and establish the potential for confusion.

The State objected to the presentation of all three witnesses and the trial court permitted *voir dire* of Charlotte and Sanchez. Charlotte proposed to testify that Kiser was often mistaken for one of his brothers or cousins. She indicated that this was because his relatives often used Kiser's name when confronted by law enforcement officials, especially because Kiser has a driver's license and most of his relatives do not. More importantly, Charlotte described two incidents with the police where Kiser was mistakenly identified as one of his family members. In addition, Sanchez testified that he detained Kiser on a capias issued in his name by the Family Court only to determine later that the capias was improperly issued in Kiser's name and that one of his relatives was the individual wanted. Finally, although Don-

---

1. The purchases occurred on May 27, June 3, and June 16 at the Willow Grove drug market. Detective Wright made a $40 purchase on May 27 and a $60 purchase on June 16. On June 3, Officer Boulerice made a $100 crack cocaine purchase.

2. An individual cooperating with the police provided some of the photographs used while others were obtained as a result of prior investigations conducted in the area.

ald Kiser offered to testify, he indicated that he would invoke his Fifth Amendment right not to incriminate himself if asked any questions other than his name and relationship to the defendant.

The trial court ruled that Kiser would not be permitted to present the testimony of any of the three witnesses before the jury. The court determined that the testimony of Charlotte and Sanchez was not relevant because neither witness testified to the factual basis for the misidentification. Moreover, the court ruled that, even if relevant, the testimony of Kiser's mother and the bailiff created the danger of confusing the issues or misleading the jury. In addition, the trial court ruled that permitting Donald Kiser to testify would unfairly prejudice the State due to his intention to invoke his Fifth Amendment rights if asked any questions other than his name and relationship to Kiser and that such evidence would be cumulative because two photographs of Donald Kiser were already in evidence.

## II

Kiser asserts that the trial court improperly excluded the testimony of Charlotte and Sanchez. Specifically, Kiser claims the trial court erred in misconstruing Charlotte's testimony when it determined that there was no factual basis for it. Kiser argues that Sanchez' testimony was relevant because it corroborated the testimony of Charlotte by establishing that members of Kiser's family used his name, thereby causing misidentification of Kiser by law enforcement officials. Finally, Kiser contends the court erred in refusing to allow him to present Donald Kiser as a witness because the probative value of such testimony was not substantially outweighed by the danger of unfair prejudice to the State. The State counters that Charlotte's testimony was not relevant be-

cause it did not involve instances of prior misidentification by the two officers involved in this case and there was no evidence presented to determine the basis for the mistakes. Lastly, the State asserts that Donald Kiser was properly excluded from testifying at trial because it would have been denied effective cross-examination as a result of Donald Kiser's intention to assert his Fifth Amendment rights.

■■■ A trial court's decision to admit or exclude otherwise legal evidence is reviewed by this Court for an abuse of discretion. See Williamson v. State, Del. Supr., 707 A.2d 350, 354 (1998); Farmer v. State, Del.Supr., 698 A.2d 946, 948 (1997). We also review for an abuse of discretion the trial court's decision to exclude relevant evidence under Delaware Rule of Evidence ("DRE") 403. See Pope v. State, Del.Supr., 632 A.2d 73, 78–79 (1993); Mercedes–Benz of N. Am. v. Norman Gershman's Things to Wear, Inc., Del.Supr., 596 A.2d 1358, 1366 (1991). "An abuse of discretion occurs when 'a court has ... exceeded the bounds of reason in view of the circumstances,' [or] ... so ignored recognized rules of law or practice ... to produce injustice." Lilly v. State, Del.Supr., 649 A.2d 1055, 1059 (1994)(quoting Firestone Tire & Rubber Co. v. Adams, Del. Supr., 541 A.2d 567, 570 (1988)). To constitute reversible error, there must be a clear abuse of discretion. See Robinson v. State, Del.Supr., 600 A.2d 356, 360 (1991).

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." DRE 401. All relevant evidence is admissible at trial unless excluded by rule or statute. See DRE 402. Pursuant to DRE 403, relevant evidence may be excluded at trial "if its probative value is substantially outweighed by the danger of

... confusion of the issues or misleading the jury."

■ Generally, the purpose for which evidence is offered must be examined to determine whether the evidence is relevant. *See Farmer*, 698 A.2d at 948. In order to be considered relevant, the purpose for which the evidence is offered must be material and probative. *See Lilly*, 649 A.2d at 1060. Evidence is material to the action if the fact that the evidence is offered to prove is "of consequence to the action." *Farmer*, 698 A.2d at 948; *see also Getz v. State*, Del.Supr., 538 A.2d 726, 731 (1988) ("Materiality looks to the relation between the propositions for which the evidence is offered and the issues, or ultimate facts, in the case."). Evidence has probative value if it "advance[s] the likelihood of the fact asserted." *Farmer*, 698 A.2d at 948; *see also Getz*, 538 A.2d at 731("Probative value is concerned with the tendency of the evidence to establish the proposition that it is offered to prove."). Therefore, to be admissible, the fact sought to be established by the evidence must be "of consequence" to the action and the evidence offered to prove that fact must further "the probability that it is as a party claims it to be...." *Getz*, 538 A.2d at 731.

Here, Kiser sought to establish—through the testimony of Charlotte, Sanchez, and Donald Kiser—that the officers mistakenly identified Kiser as the individual from whom they purchased crack cocaine. Where a defendant in a criminal case claims he or she was not the one who committed the crime, a central issue, or ultimate fact, necessarily becomes the identity of the perpetrator. Whether the officers were mistaken in their identification of Kiser, as Kiser claims, is not only a material issue but also the core defense in this case. The question then becomes whether the disputed evidence offered to establish this fact had probative value. The testimonial value of each witness must be separately addressed.

### A. Goldie Charlotte

■ Kiser sought to have Charlotte testify concerning two events where Kiser was mistaken for one of his relatives. During *voir dire*, Charlotte testified that, on one occasion, she was a passenger in an automobile driven by Kiser when a Dover police officer stopped the vehicle. Charlotte stated that the officer insisted that Kiser was his brother, Lamar Kiser. According to Charlotte, Kiser informed the police that he was Lamont Kiser and the officer responded that he believed he was Lamar Kiser. Charlotte specifically stated that the officer "said that [Lamont] was Lamar Kiser. They claimed they knew him." Then, in response to the trial judge's question whether Charlotte heard the officer say anything she stated "They called him Lamar ... he told him he was Lamar Kiser, because he knew him." Charlotte testified that she and Kiser were detained for some time while the officer verified, through conferring with another officer and looking at photographs, that Kiser was not his brother Lamar. Finally, Charlotte stated that the car was insured, registered and that the tags were in order. The second incident of misidentification testified to by Charlotte involved the Delaware State Police at Troop 3, the same agency that arrested Kiser on the charges brought against him in the present case. Charlotte stated that she had to go to Troop 3 to inform the police that it was one of Kiser's cousins, and not Kiser, that the police were searching for in connection with a particular investigation.

The trial court ruled that Charlotte's testimony concerning the stop was inadmissible because there was no foundation to establish the officer's basis for the mis-

identification. On this ground, the court concluded that the testimony was not relevant. Specifically, the court stated:

> We don't know what precipitated the stop, whether it was a driver's license tag that was in the computer or whether it was the police officer just observing them. I don't recall the police officer saying 'I know who you are, I have seen you, you are Lamar', I don't recall that testimony.

In addition, the trial court ruled that Charlotte's testimony regarding the second incident of misidentification was not relevant because it was unclear as to why the police were searching for Kiser. The court held that to the extent the testimony regarding either incident was relevant, it "would be outweighed by the danger of confusing the jury and the issues."

It is evident the trial court did not accurately recall the testimony concerning the stop and the State so concedes. The record indicates that Charlotte specifically stated that the officer stopped the vehicle because he believed the driver was Lamar Kiser. Contrary to the trial court's comments, there were sufficient factual grounds for determining the basis for the stop. The evidence of misidentification on that occasion had probative value in this case because it makes it more probable that the police could have mistaken Kiser for someone else. Furthermore, the testimony regarding the mixup with Troop 3 should have been admitted because it shows that law enforcement officials had mistaken him for one of his relatives in the past.[3] In connection with the other evi-dence of misidentification, this testimony makes it more probable, however slight the level of probability, that Kiser was misidentified in this case. It is not necessary, as the State claims, that the misidentification evidence relate to instances where the officers in the present case mistook Kiser for someone else. It is sufficient if the evidence establishes that the fact sought to be proven, here the claim of misidentification, is more probable when supported by the proffered evidence than it would be without it. *See* 1 McCormick on Evidence, § 185 (5th ed.1999). To be sure, the strength of probability that this evidence of prior misidentification supports a claim of present misidentification is arguable but that contention affects the weight not the admissibility of the disputed testimony.

■ Finally, we find that Charlotte's testimony should not have been excluded under DRE 403. In the first instance, it appears the trial judge applied the wrong standard when he ruled the testimony was inadmissable because it was "outweighed by the danger of confusing the jury and the issues." Rule 403 requires the probative value of relevant evidence to be "substantially outweighed" by the danger of confusing the issues or misleading the jury. Moreover, because Kiser's defense was based on his claim of misidentification, relevant misidentification evidence is highly probative of a material issue in the case. Where misidentification is the sole defense at trial, excluding relevant evidence pertaining to misidentification constitutes an abuse of discretion. Thus, we conclude the

---

3. This evidence is especially relevant in light of Kiser's subsequent testimony about the incident. It is apparent from Kiser's testimony that the source of the police confusion was the resemblance between Kiser and his cousin. During direct examination, Kiser stated that the police had mistaken him for his cousin who was suspected of stealing a car. Kiser testified that his cousin "stole a car one time and the cop didn't catch him, but he seen him running from the car, and he thought it was me." Kiser further testified that he and Charlotte "had to go down there to Troop 3 and get it straightened out, and I had to have the cop look at me and got straight from there."

Superior Court erred in refusing to permit this testimony.

### B. Joseph Sanchez

■ To further support his defense of misidentification, Kiser sought to call Sanchez, a Superior Court bailiff, to testify at trial. During *voir dire*, Sanchez stated that as Kiser was leaving the court following a pretrial matter, Sanchez detained him because there was an outstanding capias issued by the Family Court in the name of Lamont Kiser. Sanchez stated that the basis for detaining Kiser was solely the name on the capias. When confronted, Kiser insisted that it was a mistake. Sanchez escorted Kiser to the Sheriff's office to determine if he was in fact wanted on the capias. The capias contained Kiser's name and pertinent information. The physical description, however, indicated that the individual wanted on the capias had discoloration on his right hand. Because Kiser did not have any discoloration on his right hand, he was released.

The trial court ruled that Sanchez' testimony was not relevant because there was no basis for determining the circumstances upon which the capias was issued. The judge stated:

> we don't know why the Family Court issued the capias. We don't know that it was issued on the basis of mistaken description or because whoever they were looking for gave the defendant's name and the driver's license number or something else to the Family Court. So I think Mr. Sanchez' testimony would not be relevant in the case and would in fact ... even if it were relevant, unduly confuse the jury, so I am going to rule that he has no relevant testimony to offer.

Sanchez' testimony establishes, however, that a capias was issued by the Family Court in Kiser's name when, in fact, he was not the proper subject of the capias. Standing alone, this testimony is only marginally relevant on the issue of misidentification because, as the trial court correctly noted, the basis for Kiser's detention was the fact that the capias was issued in his name. This testimony, however, supports the other evidence of past misidentifications offered by Kiser and lends further support to his contention that he had been mistakenly identified by law enforcement officials as one of his relatives in the past. As such, this evidence is probative of whether Kiser was misidentified in this case. In ruling this evidence inadmissible under Rule 403, because it would "unduly confuse the jury," the trial judge again misstated the standard governing application of the rule of evidence by failing to apply a substantial outweighing factor. We conclude that, under these circumstances, the testimony of Sanchez is relevant and should have been admitted.

### C. Donald Kiser

■ Finally, Kiser sought to call his brother, Donald Kiser. Through separate counsel, Donald Kiser indicated that he intended to invoke his Fifth Amendment right not to incriminate himself if asked any questions concerning his involvement in the activities at the Willow Grove open air drug market. Kiser stated that he planned to ask Donald Kiser two questions: (i) his name, and (ii) his relationship to Kiser. Kiser wished to place his brother before the jury to demonstrate the physical similarities between the two individuals in an attempt to explain the potential for misidentification.

The trial court determined that the limited questioning of Donald Kiser should be excluded for two reasons. First, the court found the evidence was cumulative because there were already two photographs of

Donald Kiser in evidence. Second, the court ruled that the State would be unfairly prejudiced if Donald Kiser were permitted to testify because the State would be unable to cross-examine him in an effort to establish that there was no mistaken identification.

 Donald Kiser's appearance and identification could lead the jury to infer that he, and not his brother, was the individual who sold crack cocaine to the officers at the Willow Grove drug market. But his refusal to answer any questions other than his name and relationship to Kiser, would have precluded the State from effectively cross-examining him to dispel the inference that he was present at the time and place of the sale of drugs to the undercover officers. *Cf. Farmer*, 698 A.2d at 949. Here, the defense sought to restrict the State from conducting the cross-examination to which it was clearly entitled. The trial court did not err in refusing to permit the defense to set the parameters for the State's cross-examination. Finally, because there were already two photographs of Donald Kiser in evidence that were viewed by the jury, it was not error for the trial judge to determine that the State would be unduly prejudiced if Donald Kiser was permitted to testify.[4]

### III

The claim of misidentification did not present a peripheral issue in this case—it was the core of the defense. Exclusion of such evidence deprived the defendant of the opportunity to pursue his sole defense. Under the circumstances, the trial court's rulings directed to prior misidentification constituted an abuse of discretion and must be reversed.

For the foregoing reasons, the decision of the Superior Court is REVERSED and the matter REMANDED for a new trial consistent with this opinion.

---

4. In its brief, the State acknowledges that an alternative to having a third person take the witness stand, where the identification or physical characteristics of a defendant in a criminal case are at issue, is to have the person identified in court. The in-court identification of the person as an exhibit is subject to the usual rules of evidence. The decision of the trial court to admit such evidence is measured by an abuse of discretion standard.

In this case, an acceptable procedure on remand would be to have the defendant's mother identify Donald Kiser in the courtroom during the course of her testimony about confusion. *See People v. Diaz*, N.Y.Supr., 111 Misc.2d 1083, 445 N.Y.S.2d 888 (1981); *accord State v. Kaiama*, 81 Hawai'i 15, 911 P.2d 735 (1996) and *People v. Ward*, 193 Ill.App.3d 677, 140 Ill.Dec. 691, 550 N.E.2d 576 (1990).