**Jason R. GALLAWAY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 161, 2012.

Supreme Court of Delaware.

Submitted: March 27, 2013.
Decided: May 2, 2013.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Jason R. Gallaway ("Gallaway"), appeals from a judgment of conviction for Murder by Abuse or Neglect in the First Degree, with regard to the death of his daughter.[1] Gallaway raises one claim of error in this direct appeal. He contends that the Superior Court abused its discretion by permitting the State to admit into evidence a YouTube video of Gallaway performing a prank as part of a radio contest, several months after the death of his daughter.

We have concluded that the YouTube video was properly admitted as rebuttal evidence. Therefore, the judgment of the Superior Court must be affirmed.

### Facts

At 2:34 pm on December 2, 2010, the Seaford Police Department received an emergency call from Gallaway that his three-month-old daughter, Marissa Gallaway ("Marissa"), was not breathing. Sergeant Michael Rapa ("Sergeant Rapa") of the Seaford Police Department was the first to respond, and he immediately began administering CPR. Sergeant Rapa, along with other officers and emergency personnel, continued administering CPR until they were able to resuscitate Marissa to the point where she had a pulse. She was then transported to Nanticoke Hospital.

Sergeant Rapa then questioned Gallaway about Marissa's injuries. Gallaway responded that he was performing back and neck stretching exercises with Marissa when she fell from his grasp and onto the floor. Gallaway was taken to the Seaford Police Station, where he gave a similar account of the incident. Gallaway also told the officers that he had dropped Marissa

---

1. Del.Code Ann. tit. 11, § 634(a)(1) ("A person is guilty of murder by abuse or neglect in the first degree when the person recklessly causes the death of a child through an act of abuse and/or neglect of such child.").

the day before during similar stretching exercises.

Marissa was taken immediately to the emergency department at Nanticoke Hospital. Dr. Robert Hill ("Dr. Hill") was the first physician to treat Marissa. The record reflects that when Marissa arrived, she was not breathing, had no pulse, was pale, and was unresponsive to light or painful stimuli. After Dr. Hill was able to restart Marissa's pulse, he ordered tests to ascertain what injuries Marissa may have sustained.

The medical records entered into evidence at trial show that Marissa had sustained various injuries: a skull fracture (which caused bleeding in her skull), bruising under the chin, bruising on her jaw, bruising on her forehead, and a healing rib that had been previously fractured. Additionally, Marissa was found to have suffered retinal and vitreous hemorrhages, an injury to her left forearm, a previously fractured shoulder, and indications of trauma to her abdomen. Gallaway admitted to accidentally causing most of Marissa's previous injuries: he testified that he was clumsy and often dropped Marissa or accidentally bumped her into walls.

The medical testimony at trial indicated that only the skull fracture was believed to have been caused on the day that Gallaway called 911, as the bruising and rib injuries were healing at the time of Marissa's admission. After being stabilized, Marissa was transported to A.I. DuPont Hospital.

Marissa was admitted to the pediatric intensive care unit at A.I. DuPont Hospital. The record reflects that when Marissa arrived, she showed only minimal neurological function. Testing at A.I. DuPont Hospital showed that Marissa's injuries were worse than previously believed. She had suffered severe injuries to the upper part of her brain and brainstem, several skull fractures, and bleeding was found in

several areas around her brain. Her diagnosis was "suspected non-accidental trauma." Marissa died on December 5, 2010.

Gallaway was arrested that same day for Marissa's death. He was subsequently charged by indictment on February 22, 2011, with Murder by Abuse or Neglect in the First Degree, pursuant to title 11, section 634(a)(1) of the Delaware Code. In March, 2011, Gallaway's wife posted bail for him. A seven-day jury trial was held in the Sussex County Superior Court in January, 2012.

The State presented multiple medical experts, who all testified that Marissa's injuries were not indicative of a short fall. Instead, the State's expert medical testimony unanimously stated that Marissa's recent injuries and death were caused by non-accidental trauma. Gallaway testified in his own defense. He maintained that he had accidentally dropped Marissa during stretching exercises. Gallaway did not present any medical experts in his defense.

The jury convicted Gallaway of Murder by Abuse or Neglect in the First Degree. Gallaway was sentenced to life imprisonment without the possibility of probation or parole.

### *The YouTube Video*

On July 1, 2011, Gallaway participated in a radio contest by filming himself performing a stunt. Gallaway posted the video, which he titled "When idiots try to win a contest," to YouTube, a service that allows users to upload videos for other YouTube visitors to view. Users are able to make certain videos public (for all to see) or private (so that only select visitors can watch). The record reflects that the YouTube video was publicly available for all to view.

At trial, Gallaway testified on his own behalf. During direct examination, he

made repeated references to the fact that he was on suicide watch in prison and that he was otherwise upset because he missed his wife and Marissa.[2] Gallaway testified similarly on cross examination: "And I miss [Marissa] every day. And every day I think about killing myself, but I can't leave [my wife]. I miss my daughter. You have no idea how much I miss my daughter."

Immediately after that cross-examination testimony, the State raised the issue of a YouTube video with Gallaway. Before the video was described in any detail, defense counsel objected.

Defense Attorney: Your Honor, [the prosecutor] is trying to introduce a video clip that, at some point, Jason [Gallaway] posted on Internet months ago. It is not relevant.

Court: How is it not relevant?

Defense Attorney: Because it is some stupid prank. It doesn't talk about Marissa. It's not state of mind. It's got nothing to do with anything.

Court: How is it relevant? I ask the State: under 401, how is it relevant?

Prosecutor: [ ] The wife posted his bail in March. He is home. On July 1st, he participates in some Internet radio contest for a stupid trick and he's on camera twice rubbing Listerine in his nostrils.... Taking a cotton swab and rubbing Listerine in his nostrils. He is gargling. It is a prolong period of time. The first time he does it the video and the recording didn't work. He does it again. The whole time he is laughing and having a good time. The wife is laughing in the background. The whole point he is mak-

ing it sound like this is a suicidal individual. The video shows very much the opposite of that.

Defense Attorney: It's a five-minute period in an eight-month period of time.

Prosecutor: He can explain that, but I think it certainly goes to what he says now is his state of mind.

Court: [ ]I am finding that the proffer is relevant under Rule 401. It is probative. There is testimony in the record from the defendant with respect to his state of mind, which is a critical issue. So having put that in play, I think it is relevant under 401. And I'm finding the probative value is not outweighed by the danger of substantial prejudice under 403. So the objection is noted and overruled.

When the jury returned, Gallaway explained the contest on cross-examination: "There was a contest going on for home remedies and the winner was going to get web space. So the contest was who would actually post a video of themselves using Listerine as a decongestant." The prosecutor asked Gallaway if the radio contest was asking the participants to perform "sort of stupid human tricks." Gallaway agreed with that characterization.

When the prosecutor attempted to play the YouTube video for the jury, Gallaway's attorney stated: "Your Honor, you may want to watch the video first. I understand there was a question about it, but as far as, you know, he didn't testify that he was suicidal 24 hours a day, seven days a week."

The YouTube video was played for the trial judge out of the jury's presence. Af-

---

**2.** The record reflects that at least three references to "suicide watch" occurred during direct examination: [Defense Attorney]: "What was your demeanor at [SCI]?" [Gallaway]: "I was crying a lot." [Defense Attorney]: "What is suicide watch like?"; [Gallaway]: "They kept me on suicide watch probably a couple weeks."; [Gallaway]: "I was in suicide watch."

ter the trial judge watched the video, Gallaway's attorney objected to playing the YouTube video for the jury:

Defense Attorney: It's not probative to anything that was elicited on cross-examination. In addition to that, I think it is highly prejudicial. They are not introducing it for any other purpose than to make him look bad. It's been out for a long period of time. This is a five-minute period in a ten-month stretch or eight-month stretch. I don't think is relevant. It is off point.... It is just being stupid and using curse words and there is no reason to play the video other than to make him look bad.

Prosecutor: He was very emotional on the stand, saying he was crying, saying he was suicidal, he thought about killing himself every day; he did this trick because he was in pain, he wanted to hurt himself. All of that is shown to be extremely not true from this video. He and his wife are in a very flippant mood. It's not anywhere near the year anniversary of the death of his daughter. Clearly, it is not something I could have even played in my case in chief, didn't even try. I had stumbled across this a few weeks ago. I provided it to defense when I became aware of the video that he and his wife posted for the world to see. He is going to get up there and boo-hoo about how much he thought about his daughter, how much she meant to him, how much she is on my mind everyday, suicidal everyday. The jury has a right to see on July 1st, he wasn't.

\* \* \*

Defense Attorney: The State seems to be introducing evidence about the grief process. I think that will open up a whole new can of worms that

aren't related. There are two people that are at home. They had a daughter die six months previously, seven months, six months, and how people react with grief in different ways. So what if they took a couple minutes and did something stupid? But I think it is highly prejudicial.... Just he expressed grief here and did exhibit grief here, it doesn't mean he has grief seven days a week, 24 hours a day.

Prosecutor: He just said, his testimony was he was suicidal every day. Suicidal every day, that means grief.

\* \* \*

Court: This is my ruling: I'm finding under Rule 401, it is, in fact, relevant. I realize this is a broad statement. He put his state of mind into play. He said he was suicidal. That is probative with respect to the relationship that he shares with his wife and the mother of the child. It shows a glimpse into the kind of relationship they have. So it is also relevant as to that. This is very much at issue here in the case as to what happened to that child. I am finding also under Rule 403 that the probative value is not outweighed by substantial prejudice.

Thereafter, the jury was brought back in and the YouTube video was played. After the video finished, the State had only two follow up questions for Gallaway on cross-examination:

Prosecutor: Again, you posted that on July 1st of last summer?

Gallaway: Yes.

Prosecutor: About six or seven months after Marissa died?

Gallaway: Yes.

Out of the jury's presence, the trial judge further clarified his ruling regarding the admissibility of the video:

> [U]nder Delaware Rule of Evidence 401, the videotapes were relevant to show that defendant was not remorseful, as he claimed, or sorrowful, as he claimed. The videotapes are also relevant as a piercing view of a marriage in which defendant could exercise his aberrant conduct to the fullest.
>
> Relevant evidence is inherently prejudicial. Under Delaware Rule of Evidence 403, the probative value of the videotapes outweighed any risk of unfair prejudice. The videotapes showed the jury a man of reckless mind only seven months after his daughter's death at his hands and shortly after his release from prison, knowing full well that he might return.

### Standard of Review

■ On appeal, Gallaway's only claim of error is that the trial judge erred in admitting the YouTube video as evidence to be played for the jury. Gallaway argues that the video was not relevant under the Delaware Rules of Evidence, and alternatively, that even if relevant, it was unfairly prejudicial. The determinations of relevancy and unfair prejudice are "matters within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion."[3]

■ "An abuse of discretion occurs when a court has ... exceeded the bounds of reason in view of the circumstances [or]

... so ignored recognized rules of law or practice ... to produce injustice."[4] If the record reflects that the trial judge abused his or her discretion, then this Court must determine "whether the error rises to the level of significant prejudice which would act to deny [Gallaway] a fair trial."[5] Gallaway bears the burden of establishing a "clear abuse of discretion" to be entitled to a reversal of his conviction.[6]

### Relevant Evidence

■ Delaware Rule of Evidence ("DRE") 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This Court has summarized the duel aspects of DRE 401, as follows:

> DRE 401 embraces the notion that relevancy consists of both materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues, or ultimate facts, in the case. Probative value is concerned with the tendency of the evidence to establish the proposition that it is offered to prove. Hence, a fact that is "of consequence" is material and evidence that advances the probability that it is as a party claims it to be has probative value.[7]

Accordingly, the threshold determination is the relevancy of the YouTube video. In making that determination, this Court must decide whether the trial judge

3. *Mercedes–Benz of N. Am. Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1366 (Del.1991).

4. *Culp v. State*, 766 A.2d 486, 489 (Del.2001) (internal quotations and citations omitted).

5. *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008) (internal citation omitted).

6. *Harper v. State*, 970 A.2d 199, 201 (Del. 2009) (quoting *Kiser v. State*, 769 A.2d 736, 739 (Del.2001)).

7. *Getz v. State*, 538 A.2d 726, 731 (Del.1988) (internal citation omitted). *See also Watkins v. State*, 23 A.3d 151, 155 (Del.2011).

abused his discretion in finding that the video was first, material to issues "of consequence" at trial; and second, that it had probative value, in that it advanced the probability that the facts or issues asserted were true.

In this case, the State alleged that Gallaway was legally responsible for the death of his daughter, Marissa. To prove that the injuries were inflicted by Gallaway non-accidentally, the State produced multiple medical experts who testified to that conclusion. Gallaway did not rebut the State's experts with his own medical experts.

Instead, Gallaway elected to testify on his own behalf that Marissa accidentally fell out of his grasp, thus casting doubt on the State's theory that he intentionally or recklessly injured Marissa. In support of his testimony, Gallaway testified on direct examination that he was on suicide watch in prison while he was incarcerated before trial. On cross-examination, he further testified that he was suicidal and went as far as to say that "every day I think about killing myself."

After this statement was made on cross-examination, the State sought to introduce the YouTube video, which showed Gallaway laughing, cursing, and engaging in a childish prank. A video showing Gallaway engaging in such conduct would not be material to demonstrate that he acted intentionally or recklessly many months earlier. Therefore, it would not be admissible during the State's case-in-chief.

However, the State contends that Gallaway's demeanor became an issue "of consequence" after he elected to testify that he was depressed and suicidal "every day" after the incident.[8] The trial judge ruled that when Gallaway testified that he was depressed and suicidal every day, he put the issue of his "post-incident" demeanor at issue. The trial judge watched the video and determined that, even though it was only five minutes long, it would provide the jury with one probative example of Gallaway's "post-incident" demeanor that was inconsistent with his testimony. Therefore, the trial judge concluded that it was relevant rebuttal evidence.

### No Unfair Prejudice

■ DRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Gallaway argues that the probative value of the YouTube video is substantially outweighed by the danger of unfair prejudice.

Evidence may be excluded as unfairly prejudicial for a variety of reasons. Generally, unfair prejudice within the context of DRE 403 means an undue tendency to suggest that the jury will render an adverse decision based on emotional grounds, instead of properly weighing the evidence. This was the substance of Gallaway's objection at trial and continues in this appeal.

The trial judge heard arguments from Gallaway and the State about the merits of playing the YouTube video. The trial judge watched the video before ruling on whether it could be played for the jury. The trial judge's two discretionary evidentiary rulings (relevance and no unfair prejudice) must be accorded deference on appeal and will constitute an abuse of discretion only if they are clearly erroneous.

---

**8.** *See Register v. Wilmington Med. Ctr., Inc.,* 377 A.2d 8, 10 (Del.1977) ("[R]elevancy is determined by examining the purpose for which evidence is offered. Evidence which is irrelevant for one purpose may be quite relevant for another. . . .").

In Gallaway's case, neither of those two evidentiary rulings was clearly erroneous.

The trial judge's conclusion to allow the YouTube video to be admitted into evidence and to be played for the jury is consistent with this Court's decision in *Tucker v. State.*[9] In *Tucker,* we held that "when a party opens up a subject, he cannot object if the opposing party introduces evidence on the same subject. This is true even though the evidence developed on cross examination would have been inadmissible if the cross-examiner had offered it directly into evidence."[10] The rationale for that holding is to prevent a defendant from testifying in one manner, but then excluding all contrary evidence.[11]

Gallaway testified that he was always depressed and suicidal. The State sought to undermine his credibility on that issue by introducing the YouTube video showing Gallaway laughing and engaging in childish pranks. The trial judge reviewed the video and concluded that its probative value outweighed the danger of unfair prejudice.[12]

■ "The determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the first-hand opportunity to evaluate relevant factors."[13] Such rulings will be upheld on appeal unless "it is shown that a ruling was a clear abuse of discretion or that it affected the substantial rights of the defendant."[14] The record reflects that the trial judge's discretionary evidentiary rulings were not clearly erroneous and the uncontroverted expert medical testimony introduced by the State demonstrates that no substantial rights were adversely impacted by the introduction of the YouTube video.

### Conclusion

The judgments of the Superior Court are affirmed.

---

9.  *Tucker v. State,* 515 A.2d 398 (Del. Sept. 12, 1986)(table).

10. *Id.* at *1.

11. *Id.* In *Tucker,* this Court cautioned that our holding is limited to actual contradictory evidence, and cannot be used merely to inject prejudicial evidence into the record. *Id.*

12. Gallaway was able to explain his version of the video, and was able to further testify that he did it to pain himself. The jury was free to reject or accept his testimony.

13. *Williams v. State,* 494 A.2d 1237, 1241 (Del.1985) (citing *Rush v. State,* 491 A.2d 439 (Del.1985)).

14. *Ciccaglione v. State,* 474 A.2d 126, 130 (Del.1984) (quoting *United States v. Golden,* 671 F.2d 369, 371 (10th Cir.1982)).