IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAHEED MATTHEWS, | § | |
| | § | No. 296, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1806004163 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 9, 2020
Decided: November 9, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

## ORDER

This 9th day of November, 2020, having considered the briefs and the record below, and following oral argument, it appears to the Court that:

(1)    On April 15, 2019, a Superior Court jury found Shaheed Matthews guilty of murder and firearm-possession charges.  In this appeal from his convictions, he raises one narrow ground–whether the Superior Court abused its discretion when it permitted the State to admit evidence at trial about Matthews's internet search history and text messages related to the possible purchase of a gun. We find no merit to his argument and affirm his convictions.

(2)     At 10:42 p.m. on December 28, 2017, a resident of Briarcliff Drive in New Castle reported gunshots to police.  Briarcliff Drive runs parallel to Parma Avenue, where the shooting victim was eventually found.  Around the same time a Parma Avenue resident called police to report being awakened by three or four gunshots and saw from his window a large person in a grey or black hoodie pointing or extending their arm.  Police did not immediately locate the victim in response to the calls.  At 12:25 a.m. on December 28, police responded to a report of someone lying on the ground on Parma Avenue.  Police found Antoine Terry unresponsive with multiple gunshot wounds in the area of 245 Parma Avenue.  He died from his injuries.

(3)     Terry was friends with Matthews, who stayed at 227 Parma Avenue with his girlfriend, Devon Johnson.  On December 27, 2017, the evening of the shooting, Terry, Matthews, and Johnson exchanged text messages.  Terry asked Matthews if he wanted him to "come to his crib."[1]  Matthews and Johnson were at home.  Terry, Matthews, and Johnson spent the evening together at Johnson's house watching basketball.  Johnson testified that Terry and Matthews left her house around 10:30 p.m., but she was upstairs at the time and did not see them leave.  Around the time of the first report of gunshots,  Matthews called Johnson and asked her to pick him up at a church around the corner from her house.

---

[1] App. To Opening Br. at A217.

(4)    Video cameras from the neighborhood showed two people leave 227 Parma Avenue at about 10:38 p.m., walk towards 245 Parma Avenue, stop, and fight. A video showed one man run away while the second man chased him, fired several shots, and then ran away. A video also showed that one of the two people walking out of 227 Parma Avenue appeared to be wearing a white hood and was the same person being chased by the second man firing shots. When police found Terry he was wearing a black puffy jacket, white hood, white pants, and pants around his knees.

(5)    The police interviewed Matthews on December 28, 2017. He first denied having a cell phone, then admitted he had one, but he gave police the wrong number. Matthews eventually surrendered his cell phone to police. The police recovered internet search history and a text message thread from Matthews's cell phone revealing that Matthews was looking to purchase a firearm just days prior to the fatal shooting on December 27, 2017.

(6)    The State's ballistics report was inconclusive as to the specific type of firearm used to kill Terry. The police did not recover the murder weapon. The jacket police seized from Matthews when they arrested him tested positive for gunshot residue on the right cuff.

(7)    On June 18, 2018, a grand jury indicted Matthews for murder first degree, possession of a firearm during the commission of a felony ("PFDCF"),

3

possession or control of a firearm by a person prohibited ("PFBPP"), and purchase of ammunition by a person prohibited ("PABPP"). The PFBPP charge was severed and proceeded to a non-jury trial. The State dropped the PABPP charge.

(8)     At trial, the State introduced internet search history and text messages recovered from Matthews's cell phone. In the internet searches on December 25 and 26, 2017, police recovered inquiries for a "Ruger 45" firearm. Matthews deleted the searches before turning his phone over to police. The police also found text messages from December 20, 2017 from an unknown individual offering to sell Matthews a "Taurus Millennium" firearm for $450. Matthews replied, "[t]hats too much," and the unknown individual said they would get back to Matthews if they found something else.[2] There was also an image of a Taurus handgun. Matthews's counsel objected to the admission of the gun purchase evidence under D.R.E. 404(b), arguing that the probative value of the evidence was low and outweighed by the prejudice that Matthews would suffer if introduced.

(9)     The Superior Court admitted the evidence under Rule 404(b). Applying the five factors in *Getz v. State*,[3] the court admitted the cell phone data as evidence tending to prove Matthews's intent, opportunity, preparation, or plan to kill Terry.[4]

---

[2] *Id*. at A221.
[3] 538 A.2d 726 (Del. 1988).
[4] App. to Opening Br. at A211-12.

The court also found that the probative value of the evidence was not substantially outweighed by unfair prejudice.[5] After a five-day trial, a Superior Court jury found Matthews guilty of murder first degree and PFDCF. The trial judge then found Matthews guilty of PFBPP. On July 1, 2019, the Superior Court sentenced Matthews to life in prison.

(10) On appeal, Matthews argues that the Superior Court erred by admitting evidence of his internet search for a gun and text messages discussing the purchase of a gun days before the shooting. Matthews has limited his challenge to relevance, and contends that the State did not show a nexus between the possible gun purchase and the actual gun used to kill Terry. We review a trial judge's evidentiary rulings for abuse of discretion.[6]

(11) In *Farmer v. State*,[7] we discussed the admissibility of a defendant's association with a gun when the State has not connected its use with the crime. The State introduced a gun police found in the defendant's apartment but was not linked to the crime.[8] We held that the gun was inadmissible because the State lacked evidence linking that gun, or that type of gun, to the offense charged.[9] We reasoned that "evidence that a defendant, charged with a shooting, had a firearm in his

---

[5] *Id*.
[6] *Allen v. State*, 878 A.2d 447, 450 (Del. 2005).
[7] 698 A.2d 946 (Del. 1997).
[8] *Id*. at 947.
[9] *Id.* at 948.

possession is surely probative if that firearm is tied to the criminal act."[10]  Absent a satisfactory evidentiary link, we concluded that the jury might mistakenly equate access to a gun with a disposition to use it.[11]

(12)   Also, in *Fortt v. State*,[12] the State charged the defendant with multiple armed robberies.  The State presented at least one eyewitness from each robbery who identified Fortt as the robber and testified that he was armed.[13]  The State also introduced a gun seized from Fortt's friend's residence, where Fortt was arrested.[14]  On appeal, Fortt relied on *Farmer,* arguing that the Superior Court erred in admitting the gun because the State failed to sufficiently link that gun found at the friend's residence to the firearm used in the robberies.[15]  We held that the Superior Court abused its discretion in admitting the gun because it did so without establishing a "satisfactory predicate testimonial or other evidentiary link" to the robberies.[16]  In Fortt's case, however, we concluded that the error was harmless because the three victims "testified unequivocally" that Fortt had a gun when he robbed them.[17]

(13)   Relying on *Farmer* and *Fortt*, Matthews claims that because investigators did not recover the gun used to kill Terry, the State could not show the

---

[10] *Id.* at 949.
[11] *Id.*
[12] 767 A.2d 799 (Del. 2001).
[13] *Id.* at 805.
[14] *Id.* at 804.
[15] *Id.*
[16] *Id.* 805.
[17] *Id.*

necessary evidentiary link between the particular gun Matthews searched for and attempted to purchase, and the gun used in the shooting. We find, however, that Matthews's reliance on *Farmer* and *Fortt* is misplaced. *Farmer* and *Fortt* addressed whether to admit evidence of a defendant's access to a gun when the gun could not be linked to the alleged offense. Here, the State did not offer a gun into evidence, and then imply that the gun was used in a homicide when the evidence did not support the implication. Instead, the State offered the gun purchase evidence for another purpose–to show Matthews's motive and plan to kill Terry.[18] The court also gave a limiting instruction, which helped to ameliorate any prejudice.[19] The Superior Court did not abuse its discretion in admitting the internet searches and text messages into evidence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

---

[18] App. to Opening Br. at A209.
[19] *Id*. at A209, A212.

7