# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 2008012702
)
MARLON THOMAS, )
)
Defendant. )

Submitted: June 10, 2021
Decided: August 17, 2021

Upon Consideration of the State's Motion *in Limine* to Admit Evidence. **GRANTED IN PART and DENIED IN PART**.

**Attorneys and Law Firms**

Nichole D. Gannett, Esquire, Angelica Endres, Esquire, Deputy Attorneys General, Department of Justice, Georgetown, Delaware, Attorneys for State.

Zachary A. George, Esquire, Hudson, Jones, Jaywork & Fisher, Dover, Delaware, Attorney for Defendant Marlon Thomas.

**Mark H. Conner, Judge**

# OPINION AND ORDER

Presently, Defendant Marlon Thomas ("Thomas") is charged with Rape in the Second Degree and Unlawful Sexual Contact in the Third Degree. The State, through a motion *in limine* filed under Delaware Rule of Evidence 403, is seeking to admit evidence demonstrating the victim's state of mind to prove a lack of consent. However, the evidence sought to be admitted is the victim's knowledge of Thomas's history of aggressive behavior towards women. For the reasons that follow, the State's Motion *in Limine* is **GRANTED IN PART and DENIED IN PART**.

## Factual and Procedural History

(1) On August 26, 2020, Thomas and his cousin, G.T., were watching television. According to G.T., Thomas put his hand in her shorts and asked, "so what we gonna do?"[1] G.T. told Thomas they are cousins and Thomas responded, "cousins do this stuff."[2] After retrieving a condom and placing it on his penis, Thomas got on top of G.T. and held her down.[3] Thomas forcibly pulled down her shorts and underwear and pulled up her shirt exposing her breast.[4] Thomas then achieved

---

[1] State's Motion *in Limine* ¶ 2, April 13, 2021.

[2] *Id.*

[3] *Id.* at ¶ 3.

[4] *Id.*

vaginal penetration of G.T. with his penis.[5] G.T. also claims, at some point during penetration, Thomas placed his mouth on her right breast.[6]

(2)    G.T. stated in her interview that she "did not want to be aggressive because she didn't want him to be aggressive."[7] However, G.T. told Thomas to get off and told him several times, "No, we are cousins."[8]

(3)    Thomas stopped when G.T. told him she had to use the bathroom.[9] G.T. then began texting her friends asking for help.[10] G.T. texted them instead of calling them because Thomas was still present, and she was fearful for the safety of the other women in the home.[11] G.T. was picked up from the home by one of her friends, M.L., with whom she was able to make contact and was brought to the police station.

(4)    Subsequently, Thomas was charged with Rape in the Second Degree and Unlawful Sexual Contact in the Third Degree. Thomas waived his right to a jury trial and the case is schedule for trial on October 11, 2021.

---

[5] *Id.* at ¶ 4.

[6] Hearing Tr. 10:22-11:1, Sept. 30, 2020.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at ¶ 5.

[11] *Id.*, G.T. asserts there were no other men in the home besides Thomas to come to her aid.

## Motion *in Limine*

(5)     On April 13, 2021, the State filed a motion *in limine* to admit evidence.[12] Specifically, the State wants the Court to allow the victim to testify about her state of mind at the time of the alleged offense.[13] G.T. claims to have known Thomas has been violent and aggressive with women in the past including an attempted rape in 1995 and an offensive touching conviction from an altercation with his girlfriend.[14] G.T. also alleges to have seen Thomas be violent in prior instances not resulting in charges.[15]

(6)     The State contends G.T.'s knowledge prevented her from yelling, fighting back, involving the other female members of the household, or resisting in any way other than how she did because she feared Thomas would become violent.[16] The State further explains this testimony is relevant and necessary because it goes to G.T.'s state of mind which corroborates her lack of consent for the State to prove the charge of Rape in the Second Degree.[17]

---

[12] State's Motion *in Limine*.

[13] *Id*. at ¶ 13.

[14] *Id*. at ¶ 6.

[15] *Id*.

[16] *Id*. at ¶ 13.

[17] *Id*. at ¶ 14.

-4-

(7) Thomas objects to the introduction of G.T.'s testimony claiming the State is merely asking the Court to admit general character evidence and/or evidence of specific prior bad acts under Rule 404(b).[18] Thomas argues that G.T.'s testimony does not fall within any enumerated purposes of Rule 404 and does not satisfy the requirements for admissibility set forth in *Getz v. State*.[19] Additionally, the evidence is not relevant under Rule 401 because Thomas's prior bad acts do not make the "without consent" element of Rape in the Second Degree any more or less likely.[20] Finally, the evidence does not meet the factors identified in *Deshields v. State* applicable under Rule 403 when the State seeks to admit evidence pursuant to Rule 404.[21] Under any of these rules, Thomas contends the danger of unfair prejudice of G.T.'s testimony substantially outweighs any probative value and should be excluded.[22]

---

[18] Thomas Response ¶ 4, May 12, 2021.

[19] *Id*. at ¶ 8.

[20] *Id*. at ¶ 9.

[21] *Id*. at ¶ 10.

[22] *Id*.

## Discussion

### *A. Relevancy*

(8)     The first question the Court must address is whether G.T.'s testimony would be relevant to the element of consent. Preliminarily, this Opinion and Order does not answer the question of whether G.T. actually consented to Thomas's conduct. However, for purposes of the State's Motion, the Court finds it necessary to set forth some guiding law and principles to determine whether G.T.'s testimony of her knowledge of Thomas's violent history with women would, in fact, be *relevant* to show she lacked consent.

(9)     Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."[23]

(10)   Rape in the Second Degree requires the State to prove beyond a reasonable doubt that the defendant "[i]ntentionally engages in sexual intercourse with another person, and the intercourse occurs *without the victim's consent* […]."[24]

(11)   Under the statute, "without consent" means:

The defendant compelled the victim to submit by any act of coercion […] by force, by gesture, or by threat of death, physical injury, pain or kidnapping to be inflicted upon the victim or a third party, or by any other means which would compel a reasonable person under the

---

[23] D.R.E. Rule 401.

[24] 11 *Del. C.* § 772 (a)(1) [emphasis added].

circumstances to submit. It is not required that the victim resist such force or threat to the utmost, or to resist if resistance would be futile or foolhardy, but the victim need resist only to the extent that it is reasonably necessary to make the victim's refusal to consent known to the defendant.[25]

(12)   The applicable portion of the statute reads "[…] the victim need resist only to the extent that it is reasonably necessary to make the victim's refusal to consent known to the defendant."[26] In Delaware, demonstrating a manifestation of lack of consent requires the State to prove "the victim, through words or conduct, demonstrated a lack of consent sufficiently that the Defendant was able to recognize the lack of consent."[27] Whether the defendant should have known of the lack of consent is based upon the totality of the circumstances utilizing both subjective and objective considerations.[28]

(13)   The State submits that G.T.'s proposed testimony relates to the analysis of G.T.'s "resistance", or lack thereof, as proof of her lack of consent. G.T. explains she was afraid, if she had tried to get Thomas off her, Thomas would have hurt her. Moreover, G.T. chose not to use more physical means of resistance because she feared for her safety and the safety of the other women in the home. The Court agrees

---

[25] 11 *Del. C.* § 761(k)(1).

[26] *Id.*

[27] *State v. Harris*, 2017 WL 1505219, at *17 (Del. Com. Pl. Apr. 20, 2017).

[28] *Id.*

with the State that G.T.'s knowledge of Thomas's history towards women, violent or otherwise, would advance her argument that she believed the only "safe" way to manifest her lack of consent to Thomas was to tell him, "No, we are cousins." Thus, G.T.'s testimony is relevant and material to the element of consent for the charge of Rape in the Second Degree.

### B. Rule 403 Balancing

(14)   Next, the Court must weigh the probative value of G.T.'s testimony against the dangers of its unfair prejudice to Thomas.

(15)   Although the threshold for admitting relevant evidence is low, such evidence is not admissible *per se*. Relevant evidence may be excluded under Rule 403 if its probative value is substantially outweighed by one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[29] Unfair prejudice within the context of this Rule means the jury will be inclined to render an adverse decision based on emotional grounds rather than properly weighing the evidence.[30]

---

[29] D.R.E. Rule 403. Even if the State was attempting to admit G.T.'s testimony as "other crimes/prior bad acts" pursuant to D.R.E. 404 as Thomas argues and the testimony met one of the "other purposes" exceptions under the Rule, the evidence would still be subject to the same balancing test to determine whether its probative value was outweighed by the danger of unfair prejudice as required by D.R.E. 403. *See Getz v. State*, 538 A.2d 726 (Del. 1988).

[30] *Gallaway v. State*, 65 A.3d 564, 570 (Del. 2013).

(16) The primary concern with permitting a victim's statement that she "fears" the defendant is it leads to an inference that the defendant, in fact, deserves to be feared.[31] For this reason, the Supreme Court of Delaware has adopted the reasoning delineated in *United States v. Brown* where the admissibility of statements describing the victim's fear of defendant depends on the Court finding a "substantial degree of relevance to a material issue" or a "manifest need for such evidence."[32]

(17) In the Court's view, presenting G.T.'s testimony during the State's case-in-chief creates a significant risk of unfair prejudice to Thomas. Allowing G.T. to testify that she feared Thomas and then allowing her to itemize the basis of that fear would undoubtedly illicit an emotional response from the fact finder. This is the express type of prejudice toward the defendant against which Delaware law seeks to protect. Moreover, there is no "manifest need" for G.T.'s testimony because, in the above-mentioned facts, alternative evidence exists upon which the State may prove G.T. lacked consent. Consequently, the danger of unfair prejudice substantially outweighs the probative value of G.T.'s testimony with respect to her knowledge of Thomas's violent history towards women.

---

[31] *Capano v. State*, 781 A.2d 556, 612 (Del. 2001).

[32] *Id*. at 613; *quoting United States v. Brown*, 490 F.2d 758, 774 (D.C. Cir. 1973).

## C. Rebuttal Testimony

(18)  Finally, if Thomas, in his efforts to refute G.T.'s allegations that she lacked consent, were to question G.T. about why she did not resist further, then the Court sees no reasonable alternative other than allowing G.T. to testify fully as to her knowledge of Thomas's violent history towards women as the reasoning for her reluctance to physically resist Thomas.

(19)  In *Tucker*, the Supreme Court of Delaware recognized "[g]enerally, when a party opens up a subject, he cannot object if the opposing party introduces evidence on the same subject. This is true even though the evidence developed on cross examination would have been inadmissible if the cross-examiner had offered it directly into evidence."[33] The Supreme Court explained this rule "operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage."[34]

(20)  Here, the Court finds the rule delineated in *Tucker* is applicable to the instant case. Thomas should not be allowed to exclude portions of G.T.'s testimony only to subsequently cross-examine G.T. on the subject of her lack of resistance knowing she cannot give her full and unqualified testimony. Therefore, G.T.'s aforementioned testimony is admissible rebuttal testimony.

---

[33] *Tucker v. State*, 1986 WL 17446, at *1 (Del. Sept. 12, 1986).

[34] *Id.*

## Conclusion

(21)   Accordingly, the Court **GRANTS IN PART and DENIES IN PART** the State's Motion *in Limine* to admit evidence of G.T.'s testimony of her fear of Thomas.

**IT IS SO ORDERED.**


/s/ *Mark H. Conner*

Mark H. Conner
Judge


oc:   Prothonotary
cc:   Nichole Gannett, Deputy Attorney General
      Zachary George, Esquire
      Marlon Thomas

-11-