**UNITED STATES of America,
Plaintiff,**

v.

**Myron Dejuan ORR, Defendant.**

No. 3:08–cr–0016–JAJ.

United States District Court,
S.D. Iowa,
Davenport Division.

Nov. 4, 2009.

895

Melisa Zaehringer, United States Attorney, Davenport, IA, for Plaintiff.

Murray W. Bell, Davenport, IA, for Defendant.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to the defendant's original motion for a new trial [dkt. 107] as amended [dkt. 132]. The court held an evidentiary hearing on this motion on September 23, 2009, at which the defendant was present and represented by Murray Bell. The government was represented by Melisa Zaehringer. The defendant's motion is denied.

The motion pertains to the defendant's August 2008 jury trial at which he was

represented by Frederick Cohn. The defendant now contends that Mr. Cohn rendered ineffective assistance of counsel. In the amended motion for new trial, the defendant gives seven instances of conduct that he believes constitute ineffective assistance of counsel.

## I. PROCEDURAL HISTORY

The defendant was originally charged in this matter on January 23, 2008, by criminal complaint. A six count indictment was returned against the defendant on February 12, 2008 [dkt. 11]. Attorney Murray Bell was appointed to represent the defendant. A superseding indictment was returned on March 12, 2008 [dkt. 22]. Following a couple of continuances, the matter was set for trial on April 29, 2008. Very shortly thereafter, the defendant hired attorney Frederick Cohn from Chicago [dkt. 39]. Mr. Cohn immediately moved for and received a continuance of the trial date and was permitted to file pretrial motions. He filed seven pretrial motions between June 6 and June 9, 2008, including a motion to suppress physical evidence [dkt. 54]. Mr. Cohn filed ten additional pretrial motions on June 20, 2008.

Trial commenced August 11, 2008, and concluded on August 13, 2008. The defendant was found guilty on all counts [dkt. 103].

Six days after the jury returned its verdict, the defendant filed a motion for new trial. Mr. Cohn requested that substitute counsel be appointed and moved for a free transcript of the trial. That motion was granted and, again, Murray Bell was appointed to represent the defendant.

Count 1 of the superseding indictment alleged that the defendant engaged in a conspiracy between 2005 and November of 2007, to distribute 50 grams or more of crack cocaine. Counts 2 and 3 alleged that the defendant had sold crack cocaine to an informant working for the police. The informant, Darwin Dickerson, testified at the trial. Count 4 charged that the defendant possessed more than five grams of crack cocaine with intent to distribute it on June 1, 2007. That count arises out of a search warrant executed at the residence where the defendant, his girlfriend Julie Pfalzgraff and her children resided. Police found approximately seven baggies of crack cocaine, a digital scale and approximately $700 in cash in or near the defendant's bedroom.

Counts 5 and 6 arise out of two more controlled purchases of crack cocaine from the defendant through an informant working with the police, Cody Bailey. Finally, Count 7 alleges that on September 14, 2006, the defendant was a felon in possession of a firearm. The gun was found during a search warrant executed that day at the same residence searched in June of 2007.

## II. LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on a claim of ineffective assistance of counsel, Defendant must show two things. "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To show deficient performance of counsel, the defendant must show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This requires showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The proper measure of attorney performance is "reasonableness under prevailing professional

norms." *Id.* at 688, 104 S.Ct. 2052. In scrutinizing counsel's performance, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal citation and quotation omitted).

To show prejudice, it is "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. Rather, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■■■ A court deciding a claim of ineffective assistance need not address both deficiency and prejudice "if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. 2052. In particular, the court "need not determine whether counsel's performance was deficient before examining prejudice suffered by defendant as a result of alleged deficiencies." *Id.* At all times, the "ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696, 104 S.Ct. 2052. The court here is concerned with whether the result here "is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*

### III. ANALYSIS OF TRIAL COUNSEL'S ALLEGED ERRORS

#### A. Failure to Move to Suppress Statements

On June 4, 2007, the defendant was apprehended approximately twelve blocks away from his residence after the residence had been searched. He was taken into custody, handcuffed and informed that he was arrested pursuant to an outstanding warrant for delivery of crack cocaine. The defendant was not given *Miranda* warnings. The defendant denied that there was a warrant for his arrest. The police officer informed the defendant that there was, in fact, a warrant for his arrest and for his girlfriend, Julie Pfalzgraff, as well. The defendant then stated that everything (the drugs) seized from the residence was his and that the police did not need to involve Julie Pfalzgraff. Defense counsel objected at trial to the admission of the defendant's incriminating statement. After hearing the matter outside the presence of the jury, the court ruled that merely informing the defendant that there was a warrant outstanding for his arrest and for his girlfriend was not the functional equivalent of interrogation, and ruled the defendant's statement admissible (Tr. 152–153).

■■■ "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *United States v. Hull,* 419 F.3d 762, 767 (8th Cir.2005) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). The test for determining whether police statements or actions are reasonably likely to elicit an incriminating response is an objective one; the focus is on "the perceptions of the suspect, rather than the intent of the police." *Innis,* 446 U.S. at 301, 100 S.Ct. 1682; *see also United States v. Washington,* 462 F.3d 1124, 1132 (9th Cir.2006); *United States v. Rambo,* 365 F.3d 906, 909

(10th Cir.2004). While the officer's subjective intent in making the statement may be relevant, *see Washington*, 462 F.3d at 1132, the focus is either on the perceptions of a reasonable person in the suspect's position, *see Rambo*, 365 F.3d at 909, or on whether a reasonable objective observer would have believed that the officer's statement was in fact reasonably likely to elicit an incriminating response. *See United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir.2002). Under either of these very similar formulations, the defendant was not subject to interrogation.

▇▇ The defendant's theory is that the police believe that male suspects are more likely to confess when their wives or girlfriends are also accused of conspiratorial activity. This undoubtedly happens from time to time. Even if the police officer was aware of this—a fact not established in this case—"the mere fact that a police officer may be aware that there is a 'possibility' that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation." *United States v. Taylor*, 985 F.2d 3, 8 (1st Cir.1993) (quoting *Arizona v. Mauro*, 481 U.S. 520, 528–29, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987)). Defendants also deny any wrongdoing under these circumstances or say nothing at all. Neither a reasonable person in the defendant's position here, nor a reasonable objective observer, would have believed that the officer's statement was reasonably likely to elicit an incriminating response. Moreover, the officer was merely informing the defendant of the investigation into his activities, and "we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities." *Hull*, 419 F.3d at 767 (citing *Arizona v. Roberson*, 486 U.S. 675, 687, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988)).

The court finds that Officer Siegfried's statements were not the functional equivalent of an interrogation. *Miranda* warnings were not required. Although this issue was not raised pretrial, as is ordinarily the case, the statements were appropriately objected to and the matter was appropriately decided. By objecting appropriately, Mr. Cohn performed "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Insofar as the court ruled properly upon objection, any prejudice resulting from the admission of the evidence is not due to any deficiency in Mr. Cohn's performance. *Accord Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (attorney's performance could not be "deficient" based on his failure to raise objection that would have been overruled, nor could petitioner have suffered any "prejudice" as result). Therefore, Mr. Cohn did not render ineffective assistance of counsel in failing to exclude the defendant's admission.

### B. *Failure to Object to Testimony of Mark Hanson*

▇▇ At trial, the defendant contended that he did not reside with Julie Pfalzgraff at 1305 Washington Street on September 14, 2006, when the firearm attributed to him in Count 7 was seized from under the master bedroom bed. He contended that he was living at an apartment at 803 Summer Street. The landlord of 803 Summer Street, Mark Anderson, was called to testify as to when the defendant rented an apartment on Summer Street. His testimony showed that the lease was between June and November of 2005. He was certain that the lease was not extended because the defendant failed to pay the rent. In fact, Anderson believed that the defendant never resided at 803 Summer Street. When asked why he believed that, he stated "just from talking to the other residents." Mr. Cohn did not object on

hearsay grounds and the defendant now contends that that failure constitutes ineffective assistance of counsel.

The defendant cannot show that but for that failure, there is a "reasonable probability that ... the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Whether or not the defendant actually resided at that residence at any time was absolutely inconsequential to the outcome of this trial. The point of Mr. Anderson's testimony was simply to show that even if the defendant had resided at 803 Summer Street at some point, his lease ended almost a year before the search warrant was executed at 1305 Washington Street. The failure to anticipate Mr. Anderson's answer and object to it did not constitute ineffective assistance of counsel, because his failure to move to strike the testimony could not have affected the outcome of the proceeding.

### C. *Failure to Object to Special Agent Tani Tanio—Hearsay*

■ Special Agent Tani Tanio was the case agent in this case. As a part of her investigation in this case, she made an inquiry to State of Iowa Job Service agency as to whether it had records of the defendant's employment during the conspiracy. Attorney Cohn did not object to her testimony that the defendant had approximately $3500 of income in 2006 and only $148 in 2007. In the event that Mr. Cohn had objected to this testimony, Special Agent Tanio had already arranged for a Job Service agency employee from Davenport, Iowa, to be ready to testify.

■ Attorney Cohn's failure to object to Tanio's testimony could easily be considered "sound trial strategy." *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052. In order to render reasonable performance under prevailing professional norms, an attorney need not require the opposition to lay every exhibit foundation and call every witness that is technically necessary

under evidentiary rules. For example, it is routine for defendants to stipulate to the admission of drug chemists' reports in situations where cross-examination is unlikely to be effective. *See, e.g., Lemon v. U.S.*, 335 F.3d 1095, 1096 (8th Cir.2003) (finding no ineffective assistance of counsel because counsel's stipulation to lab report was not unreasonable). It is often appropriate to waive foundation requirements or stipulate to the admissibility of the testimony. *See United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir.2004) ("counsel's decision to stipulate to certain evidence ... involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation")(quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Doing so avoids the presentation of unimpeachable witnesses whose presence might highlight the thoroughness or sophistication of some of the government's investigation or methods. *See U.S. v. Toms*, 396 F.3d 427, 433 (D.C.Cir.2005) (finding no ineffective assistance in stipulation to evidence where cross-examination could have "highlighted damning evidence"). This is a matter of appropriate trial strategy that an attorney is entitled to make.

Moreover, the defendant cannot demonstrate prejudice. In this case, the government has demonstrated that it was prepared to present the evidence from a witness who could properly authenticate Job Service's records. Even if Attorney Cohn had objected, then, the evidence still would have been presented; there would be no "reasonable probability" of a different outcome.

### D. *Failure to Adequately Cross-Examine Keri Christofferson*

■ Keri Christofferson was a very convincing witness for the government. She was arrested in September 2007 and cooperated almost immediately. Early in her cooperation, police focused heavily on her ability to assist with a Burlington,

Iowa, homicide. Later, the request for her cooperation focused on her knowledge of the conspiracy at issue in this case. She was cross-examined about her hope of receiving a sentence reduction as a result of her cooperation. She was further cross-examined about her psychiatric ailments and her diagnosis. She was cross-examined concerning hallucinations and voices that she hears when suffering from episodes of mental illness. Attorney Cohn was permitted to cross-examine her concerning the kinds of things that she saw or heard when she was hallucinating. Ms. Christofferson was further cross-examined concerning her abuse of four illegal drugs. She testified about how often she experienced psychiatric problems, her treatment and the medicine that she takes. Her cooperation plea agreement was admitted as an exhibit. Mr. Cohn criticized her credibility at length in his closing argument. (Tr. 464).

The defendant contends that she should have been further cross-examined concerning her plea agreement and an inconsistent statement in one paragraph of a lengthy interview of Keri Christofferson early in her cooperation. However, as noted above, Keri Christofferson was appropriately and extensively cross-examined concerning both her hope of receiving a reduced sentence and her alleged inability to distinguish fact from fiction. Even if there were further lines of questioning counsel could have explored, as the Eighth Circuit has stated, "[i]n hindsight, there are few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would pass muster." *Willis v. United States,* 87 F.3d 1004, 1006 (8th Cir.1996). The court finds that Mr. Cohn's cross-examination of

Ms. Christofferson—neither deficient nor prejudicial—did not fall short of effective assistance.

### E. *Failure to Call Julie Pfalzgraff or the Defendant as Witnesses*

The defendant now contends that Mr. Cohn rendered ineffective assistance of counsel by refusing to call Julie Pfalzgraff and the defendant as witnesses. He contends that Ms. Pfalzgraff would have testified that she purchased, owned and possessed the shotgun found September 14, 2006, under her master bedroom bed, that the defendant did not know about it, that she had also purchased the X–Box that the government contended was acquired by the defendant in exchange for drugs and that she never knew or heard of Keri Christofferson.

Mr. Cohn was well aware of Julie Pfalzgraff. Prior to trial, he met with her in person and also talked to her many times by telephone. During the trial, they discussed whether she would be called as a witness. Ms. Pfalzgraff testified that she and Mr. Cohn "had words" over the subject matter of her testimony.

Ms. Pfalzgraff testified at the hearing on the motion for new trial that she purchased the X–Box found at her residence on September 14, 2006, from trial witness Nicholas Nelson. She claimed that Nelson brought the X–Box and a shotgun to her residence. She described Nelson as being in some unexplained rush to leave and simply left the shotgun behind.[1]

Ms. Pfalzgraff would testify that the defendant visited but did not reside at 1305 Washington Street on September 14, 2006, when the shotgun was found. However, she admitted that the defendant's tax return found at that residence showed his address as 1305 Washington Street and

---

1. This testimony is inconsistent with the defendant's allegation in his motion. *See* Dkt. No. 132 at p. 16.

that one of her children was claimed as his dependent on that return. She would have testified that the defendant had little or no employment during the relevant time period associated with this case.

 "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." *U.S. v. Staples*, 410 F.3d 484, 488 (8th Cir.2005) (internal quotation marks and citations omitted). Given the circumstances of Ms. Pfalzgraff's potential testimony—namely, her questionable credibility as the defendant's girlfriend, her testimony about defendant's lack of employment and her unusual testimony about how the gun was left at her house—it was not unreasonable for Mr. Cohn to decide that "the potential costs of calling the witness[ ] outweighed the potential benefits." *Id.* Thus, the court finds that Attorney Cohn's decision not to call Ms. Pfalzgraff was not deficient under *Strickland.*

Similarly, the defendant contends that Mr. Cohn rendered ineffective assistance of counsel by persuading the defendant not to testify. He cannot and does not claim that he was unaware of his right to testify. The court engaged the defendant in an elaborate discussion concerning his right to testify, his right to refuse to testify and what the jury would be told under either of those circumstances. (Tr. 441–42). The court concluded as follows:

> THE COURT: If you do not testify tomorrow morning, can I consider that that will be your decision?
>
> THE DEFENDANT: I believe so, sir.

The defendant and Mr. Cohn met in person at the county jail two times prior to trial. In addition, they spoke on the telephone four additional times. Relevant tape recordings of the defendant were brought to the jail to review with him. During trial, Mr. Cohn and the defendant talked about the defendant's potential testimony. According to the defendant, he wanted to testify but Mr. Cohn advised against it claiming that the government could discredit his testimony. In the end, the defendant respected Mr. Cohn's advice and was convinced not to testify.

 A defense counsel's advice to the defendant not to testify "to prevent the government from cross-examining [the defendant] about an earlier drug conviction clearly falls within the limits of reasonable trial strategy." *Sumlin v. U.S.*, 46 F.3d 48, 49 (8th Cir.1995) (citing *El–Tabech v. Hopkins*, 997 F.2d 386, 390 (8th Cir.1993)). Here, the fact that the defendant could have been impeached with three drug felony convictions within the past ten years alone provided ample support for counsel's advice concerning the wisdom of the defendant taking the stand. Counsel's advice was not deficient.

Moreover, defendant has failed to show "a reasonable probability that the jury would have reached a different verdict if it had heard his testimony." *Foster v. Delo*, 39 F.3d 873, 877 (8th Cir.1994); *see also Sumlin*, 46 F.3d at 49. The defendant argues only that he would have testified that he never met the witness Keri Kristofferson, that Julie Pfalzgraff purchased the X–Box found in the September 14, 2006 search, and that he visited but did not live at Julie Pfalzgraff's residence. This potential testimony alone does not give rise to a reasonable probability of a different verdict. Thus, the defendant has not shown that he was actually prejudiced by his counsel's advice. *Id.* Mr. Cohn's failure to call the defendant as a witness was not ineffective assistance.

## F. Allegation That Mr. Cohn Slept During Trial

 The defendant testified at the hearing on the motion for new trial that Mr. Cohn slept during the trial on three or four occasions. In fact, he claimed that Mr. Cohn was snoring during the trial. The defendant's mother testified that Mr.

Cohn slept during the entire trial and that everyone in the courtroom was aware of it. If Mr. Cohn indeed slept through a substantial portion of trial, this court would presume prejudice for purposes of defendant's ineffective assistance claim. *See Burdine v. Johnson,* 262 F.3d 336, 341 (5th Cir.2001) (counsel who is repeatedly unconscious through not insubstantial portions of trial warrants presumption of prejudice); *see also Tippins v. Walker,* 77 F.3d 682, 686–87 (2d Cir.1996) (prejudice is inherent at point at which unconscious or sleeping counsel becomes equivalent to no counsel at all).

The courtroom in which this case was tried is modern, relatively intimate and has excellent acoustics. The court and its staff are appropriately vigilant about unusual behavior such as sleeping jurors. The prosecutor and case agent sit just a few feet away from the defense attorney. Only the defendant and his mother claim to have observed Mr. Cohn sleeping. Mr. Cohn objected aggressively throughout the trial, at least fifty times.[2] Many of his objections were sustained.[3] Many of the objections that were not sustained were deemed by the court to be either hyper technical or argumentative objections. However, this consistent pattern of objection demonstrated to the court that not only was Mr. Cohn alert, he knew what he was doing.

Defendant has shown neither deficiency nor prejudice. In making his claim of ineffective assistance, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. That way, the court can "determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* The defendant here gave no indication as to when during the trial Mr. Cohn allegedly fell asleep. Without this information, it is difficult to examine the transcript in an effort to look for lapses in counsel's judgment. Mr. Cohn's health is such that he had difficulty quickly getting in and out of his chair. Beyond this, the court observed nothing about his condition that impaired his ability to try the case. Therefore, despite the defendant's allegations that his attorney slept, the court finds no ineffective assistance of counsel arising out of these allegations.

### G. *Mr. Cohn's Stroke*

Mr. Cohn testified by telephone at the September 23, 2009, hearing. He testified that the drive from Chicago to Davenport ordinarily takes approximately three hours but it took six hours for him to get to Chicago the day after the trial. On his way back to Chicago, he was stopped by the police twice for traffic offenses. When stopped in Chicago, he was doing twenty miles per hour on the expressway. Police gave him a breathalyzer test which he passed as he does not consume alcohol. He got to his office and requested that his paralegal drive him home. There, he went to sleep and woke up speaking incoherently. He was hospitalized between August 15 and August 21, 2008, and it was determined that he had suffered a series of small strokes.

■ The two-part test of *Strickland* applies to claims based on the illness or incapacity of counsel during trial. *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). To make an ineffective assistance claim based on illness, a defendant "must point to *specific* errors or omissions

---

**2.** *See* Tr. 69, 70, 71, 86, 87, 89, 96, 98, 99, 100, 101, 102, 110, 119, 141, 147, 148, 151, 165, 183, 197, 204, 206, 227, 234, 245, 266, 273, 275, 277, 282, 294, 304, 346, 365, 374, 375, 382, 384, 422, 423, 427, 428.

**3.** *See* Tr. 86, 99, 141, 148, 165, 273, 277, 282.

904

in [the attorney's] courtroom behavior and conduct at trial that were a product of the attorney's illness." *Id.* (emphasis original). Here again the defendant fails to show specific errors—beyond those analyzed and rejected above—falling outside the scope of reasonable assistance due to any pre-stroke symptoms Mr. Cohn may have experienced. Evidence of Mr. Cohn's post-trial stroke does not constitute an independent ground for an ineffective assistance claim.

Therefore, because he has failed to make a showing of ineffective assistance of counsel, the defendant's motion for new trial is denied.

Upon the foregoing,

**IT IS ORDERED** that defendant's original motion for a new trial [dkt. 107] as amended [dkt. 132] is denied.

Sentencing of defendant Orr shall be held on **November 12, 2009, at 3:00 p.m.**