# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
           v.              )
                      )     ID: 2408012256
DEJUAN I. ROBINSON,    )
                      )
       Defendant.     )
                      )

Date Submitted: November 3, 2025
Date Decided: November 4, 2025

## MEMORANDUM OPINION

***Defendant's Motion in Limine to Preclude Admission of Defendant's Statements:*
DENIED.**

***State's Motion in Limine to Admit Defendant's Statement:*
GRANTED in part, DENIED in part.**

John W. Downs, Esquire, Barzilai K. Axelrod, Esquire, Alexandra P. Manolakos, Esquire, and Zoe E. Schloss, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State of Delaware*.

Michael B. DegliObizzi, Esquire, HOLLOWAY LAW LLC, Wilmington, Delaware, and Justin C. Capek, Esquire, SCHATZ, STEINBERG & KLAYMAN, Philadelphia, Pennsylvania. *Attorneys for Defendant*.

**Adams, J.**

## INTRODUCTION AND FACTUAL BACKGROUND

On August 21, 2024, a minivan with a family of six inside was involved in a collision with the Defendant, Dejuan Robinson ("Robinson"). [1] As a result of the collision, the mother and one of her daughters were pronounced dead at the scene.[2] Four additional children were seriously injured.[3] The fatal collision was a result of Robinson allegedly fleeing from police, running a red light, and crashing into the minivan.[4] After the collision, Robinson was transported to Christiana Hospital for emergency surgery.[5]

Law enforcement questioned Robinson while he was handcuffed to his hospital bed awaiting surgery.[6] Robinson never received *Miranda* warnings prior to this questioning.[7] The next day, Robinson was arraigned and committed to the Department of Corrections ("DOC").[8] Detective Justice arrived at Christiana Hospital to "watch" Robinson until DOC assumed custody.[9] At some point, Detective Justice began gathering papers in Robinson's room for DOC staff.[10]

---

[1] D.I. 31 ["Def. Mot. *in Limine*"] ¶ 2; D.I. 33 ["State's Mot. *in Limine*"] at 1. The facts from this Order are drawn from both Motions in *Limine*.
[2] State's Mot. *in Limine* at 1.
[3] *Id.*
[4] *Id.*
[5] *Id*; Def. Mot. *in Limine* ¶ 2.
[6] Def. Mot. *in Limine* ¶ 3; State's Mot. *in Limine* at 1-2.
[7] Def. Mot. *in Limine* ¶ 3.
[8] Def. Mot. *in Limine* ¶ 2; State's Mot. *in Limine* at 2.
[9] Def. Mot. *in Limine* ¶ 2; State's Mot. *in Limine* at 2.
[10] State's Mot. *in Limine* at 2.

Per Detective Justice's police report, Robinson then directed a comment towards Detective Justice.[11] The comment was unintelligible, but Detective Justice recognized Robinson's annoyance by his presence.[12] Robinson later asked Detective Justice why it seemed he had an attitude with Robinson.[13] Detective Justice stated his personal displeasure being with someone who just "killed a mother, daughter, and critically injured another child."[14] Robinson allegedly responded with "*I don't give a fuck about dem people*" (the "Statement").[15]

Robinson alleges he was under the combined effects of post-surgical anesthesia and pain killers when he made the Statement.[16] No body worn camera recorded the interaction.[17] Following Robin's hospitalization, Robinson was transported to Howard R. Young Correctional Institute.[18] A grand jury later indicted Robinson with two counts of Second Degree Murder and other offenses.[19]

Robinson and the State filed competing motions regarding the Statement – Robinson seeks to exclude the Statement; the State seeks to admit it.[20] Robinson

---

[11] *Id.*

[12] *Id.*

[13] *Id*; Def. Mot. *in Limine* ¶ 4.

[14] Def. Mot. *in Limine* ¶ 4; State's Mot. *in Limine* at 2.

[15] Def. Mot. *in Limine* ¶ 4; State's Mot. *in Limine* at 2.

[16] Def. Mot. *in Limine* ¶¶ 4-5.

[17] *Id*. ¶ 4.

[18] State's Mot. *in Limine* at 2.

[19] *Id.*

[20] *See generally* Def. Mot. *in Limine* (presenting Robinson's argument for why the Statement should be excluded pursuant to D.R.E. 401 and 403); State's Mot. *in Limine* (presenting the State's argument for why the Statement should be admitted).

first argues the Statement is irrelevant to establish Second Degree *mens rea* under D.R.E. 401.[21] Robinson then argues even if the Statement was relevant, introducing it at trial would be unfairly prejudicial to Robinson under D.R.E. 403.[22]

In contrast, the State seeks to admit the Statement to establish the *mens rea* required for Second Degree Murder.[23] The State first argues the Statement is relevant under D.R.E. 401 to establish Second Degree Murder *mens rea*.[24] The State then argues the Statement is not hearsay and does not implicate *Miranda*.[25] The State finally argues the Statement's probative value is not substantially outweighed by any factors pursuant to D.R.E. 403.[26] Trial in this action is set to begin on November 10, 2025.

## ANALYSIS

### A. The Statement is relevant.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[27] All "relevant evidence is admissible, except as otherwise

---

[21] *Id.* ¶¶ 1, 5, 7.
[22] *Id.* ¶¶ 1, 6, 7.
[23] State's Mot. *in Limine* at 2-5.
[24] *Id.* at 3.
[25] *Id.* at 3-4.
[26] *Id.* at 4-5. Although the State filed a Response to Defendant's Motion *in Limine* on October 31, 2025, Defendant did not file a Response to the State's Motion to Admit. Defense counsel informed the Court on November 3, 2025 that Robinson did not intend to file a response to the Motion to Admit.
[27] D.R.E. 401.

provided" by statute, other D.R.E. rules, or applicable state court rules.[28]  Evidence which is not relevant is not admissible.[29]

Delaware law "embraces the notion that relevancy consists of both materiality and probable value."[30]  Materiality looks to the relationship between the propositions for which evidence is offered and the ultimate facts of a case.[31]  Probative value concerns "the tendency of the evidence to establish the proposition that it is offered to prove.[32]  A "fact that is 'of consequence' is therefore material and evidence that advances the probability that it is as a party claims it to be has probative value."[33]

To determine whether the Statement is relevant pursuant to D.R.E. 401, the court engages in a two-step process.  The court will first ascertain whether the Statement has any tendency to make a fact more or less probable.[34]  The court will then determine whether that fact is of consequence in determining the action.[35]  If the Statement satisfies both inquiries, it will be deemed relevant evidence.

Regarding the first step, the State and Robinson agree the disputed fact is whether Robinson, when the fatal collision occurred, possessed the requisite *mens*

---

[28] D.R.E. 402.
[29] *Id.*
[30] *Getz v. State*, 538 A.2d 726, 731 (Del. 1988) (citation omitted).
[31] *Id.* (citation omitted).
[32] *Id.*
[33] *Id.* (citation omitted).
[34] D.R.E. 401.
[35] *Id.*

*rea* for Second Degree Murder.[36]  In Delaware, a person is guilty of Second Degree Murder when the person "recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life[.]"[37]

The Statement tends to make it more probable Robinson contained the requisite *mens rea* for a Second Degree Murder conviction.  Robinson must have acted under circumstances manifesting indifference to human life.  An individual is more likely to have previously acted with indifference to human life if they later show their capability of similar indifference shortly after.  In the Statement, Robinson directly expresses his lack of concern for a killed mother and child.  The Statement therefore has probative value.

The Court next examines whether Robinson's *mens rea* at the time of the collision is a fact of consequence in determining this action.  Robinson's *mens rea* is critical to whether Robinson committed Second Degree Murder.  Robinson cannot be convicted for Second Degree Murder without proof he possessed the requisite *mens rea*, meaning his state of mind is material to the case's outcome.  Because Robinson's *mens rea* at the time of the collision relates directly to an ultimate fact of the case, the Court finds Robinson's *mens rea* a fact of consequence.

---

[36] Def. Mot. *in Limine* ¶ 1; State's Mot. *in Limine* at 3.
[37] 11 *Del. C.* § 635(1) (West 2025).  Any further reference to "indifference to human life" or "indifference" should be understood as "cruel, wicked and depraved indifference to human life."

Robinson argues the post-collision Statement is not relevant to his collision-night *mens rea*.[38] Robinson cites no caselaw to support the proposition that post-crime acts or statements cannot be used to prove an earlier state of mind.[39] Analogous caselaw supports the opposite position.[40] In Delaware, post-accident conduct has been introduced to reveal pre-accident state of mind, including for proving *mens rea* for Second Degree Murder.[41]

Robinson also argues the circumstances surrounding the Statement make the Statement less relevant.[42] Robinson asserts the Statement was made while he was under the effects of anesthesia and post-surgery pain killers.[43] Robinson also notes the Statement followed his high bail being set and growing uncertainty about his post-surgical detention.[44] These circumstances may affect the Statement's reliability, but none affect the Statement's relevancy.

---

[38] Def. Mot. *in Limine* ¶ 5.

[39] *See generally id.* (providing no caselaw to support that post-crime conduct or statements cannot be used to help prove an earlier state of mind).

[40] *See State v. Ford*, 293 A.3d 372, 379, 387-388 (Del. Super. 2023) (discussing post-accident conduct being used to prove *mens rea* at the time of a fatal collision).

[41] *Id.* In *Ford*, the defendant was racing another car at over 90 miles per hour. *Id.* at 376. The defendant drove through a turn-only lane at a red light and collided with a truck. *Id.* The truck driver was killed. *Id.* At issue was whether the defendant's *mens rea* would elevate manslaughter to Second Degree Murder. *Id.* at 378. The defendant admitted post-accident conduct as evidence against having requisite *mens rea* for Second Degree Murder. *Id.* at 379. This conduct included the defendant crying on the phone to his mother, asking about the truck driver's condition, crying when informed of the driver's death, being cooperative with the police, and more. *Id.*

[42] Def. Mot. *in Limine* ¶ 5.

[43] *Id.*

[44] *Id.*

Because the Statement makes a fact of consequence more probable, the Statement is relevant under D.R.E. 401.

**B. The probative value of the Statement is not substantially outweighed by the danger of unfair prejudice.**

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[45] Unfair prejudice within the context of D.R.E. 403 generally means "an undue tendency to suggest that the jury will render an adverse decision based on emotional grounds, instead of properly weighing the evidence."[46] Whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is within the discretion of the trial judge, who has the first-hand opportunity to evaluate relevant factors.[47]

Pursuant to D.R.E. 403, the Court must balance the Statement's probative value against its unfair prejudicial effect to determine whether the Statement should be excluded. To conduct this balancing test, the court must first determine the probative value the Statement has in Robinson's case.[48] The court must then

---

[45] D.R.E. 403.
[46] *Gallaway v. State*, 65 A.3d 564, 570 (Del. 2013).
[47] *Id*. at 571 (citing *Williams v. State*, 494 A.2d 1237, 1241 (Del. 1985)).
[48] D.R.E. 403.

determine the level of unfair prejudice the Statement brings to Robinson.[49]  Only if the Statement's probative value is substantially outweighed by its prejudicial effect can the court exclude the Statement pursuant to D.R.E. 403.

As to the first step of the balancing test, the Statement is highly probative. The State must show Robinson had indifference toward human life when the collision occurred.[50]  Three facts make the Statement highly probative: (1) Robinson made the Statement; (2) the Statement was made within forty-eight hours of the collision; and (3) the Statement concerned the same victims Robinson is accused of murdering.  These facts tend to make it more probable Robinson possessed the requisite *mens rea* for Second Degree Murder on the night of the collision.  The Court therefore finds the Statement to be highly probative of Robinson's *mens rea* at the time of the collision, even if the Statement was made post-collision.

The Court next examines the Statement's unfair prejudicial effect on Robinson.  A difference exists between "prejudicial" evidence and evidence "unfairly prejudicial" to a defendant.[51]  All adverse evidence is prejudicial.[52] Unfair prejudice only arises when an undue tendency suggests a jury's decision will be

---

[49] *Id.*

[50] 11 *Del. C.* § 635(1) (West 2025).

[51] "Not all prejudice is unfair prejudice, and Rule 403 bars only the latter." *United States v. Long*, 92 F.4th 481, 488 (3rd. Cir. 2024) (citing *United States v. Heatherly*, 985 F.3d 254, 266 (3rd. Cir. 2021)).

[52] "Any evidence that is properly admissible during the State's case-in-chief is prejudicial to the defendant in the sense that it enhances the likelihood of a conviction."  *Stevenson v. State*, 709 A.2d 619, 632 (Del. 1998).

based on emotional grounds rather than a weighing of the evidence.[53] Prejudicial

evidence, however, can still elicit emotions from a jury without becoming unfairly

prejudicial to a defendant.[54]

The Statement is prejudicial to Robinson. The Statement appears to depict

Robinson as unremorseful and unsympathetic. Because lack of remorse or sympathy

display indifference to human life, the Statement makes it more likely Robinson

possessed the same *mens rea* 48 hours earlier. The Statement also leads the jury to

view Robinson more negatively. That fact does not automatically make the

Statement unfairly prejudicial. The prejudice only becomes unfair if the jury's

decision is based on emotion alone and not a weighing of the evidence.

The Court disagrees with Robinson that the Statement will inflame and

mislead the jury, leading to Robinson being unfairly prejudiced.[55] Robinson's

concern is the Statement's introduction will lead the jury to render a decision based

on a wish to punish him for lack of post-collision remorse.[56]

In applying the D.R.E. 403 balancing test, the Court finds the Statement's

highly probative value is not substantially outweighed by any unfair prejudicial

---

[53] *Gallaway*, 65 A.3d at 570.
[54] Courts are "not required to scrub [a] trial clean of all evidence that may have an emotional impact." *Long*, 92 F.4th at 488 (citing *United States v. Cunningham*, 694 F.3d 372, 391 (3rd. Cir. 2012)).
[55] Def. Mot. *in Limine* ¶ 6.
[56] *Id.* If the Court was not excluding the Statement pursuant to *Miranda*, providing the jury a limiting instruction would cure this concern.

effect it has on Robinson. The Court also finds the Statement's high probative value is not substantially outweighed by any other factors listed under D.R.E. 403, especially if a limiting instruction would be used to narrow the jury's use of the Statement.

### C. *Miranda* bars the admission of the Statement.

The State moved to Admit the Statement, arguing *Miranda* is inapplicable because the Statement was not made "in response to a custodial interrogation or the functional equivalent thereof."[57] Defendant did not move for the Statement's exclusion pursuant to *Miranda*, but did weave facts and points more poignant for a *Miranda* violation throughout its Motion.[58] Because the State put *Miranda* at issue, the Court will consider whether the Statement should be excluded pursuant to *Miranda*.

The Fifth Amendment to the United States Constitution guarantees that no person shall be compelled in any criminal case to be a witness against himself.[59] *Miranda* extended this right to custodial interrogation of a person suspected or

---

[57] State's Mot. *in Limine* at 3

[58] For example, Robinson asserts he was "essentially re-interviewed post-surgery" after not receiving *Miranda* warnings before being questioned pre-surgery. Def. Mot. *in Limine* ¶ 3. Robinson also asserts the Statement was "elicited by unprovoked disrespect and antagonization" by Detective Justice. *Id.* ¶ 7.

[59] U.S. CONST. amend V. This protection applies to state action through the Fourteenth Amendment to the United States Constitution. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

accused of a crime.[60] The landmark case "established that law enforcement officials may not constitutionally subject citizens to custodial interrogation without [citizens being] first advised of certain rights protective of their Fifth Amendment privilege against self-incrimination."[61]

The Supreme Court of the United States defined "custodial interrogation" as "questioning by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[62] A person is "in custody" under *Miranda* if, when applying an objective reasonable person standard to the totality of the circumstances, the Defendant would not feel free to leave or terminate questioning.[63] "Interrogation" under *Miranda* means express questioning or its functional equivalent.[64]

---

[60] *Marine v. State*, 607 A.2d 1185, 1192 (Del. 1992) (citing *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).

[61] *Id.* (citing *Miranda*, 384 U.S. at 467).

[62] *Miranda*, 384 U.S. at 444.

[63] *State v. Alexander*, 1994 WL 150862, at *4 (Del. Super. Feb. 17, 1994) (citing *Marine*, 607 A.2d at 1193); *Id.* (citing *U.S. v. Phillips*, 812 F.2d 1355, 1360 (11th Cir. 1987)). The key inquiry courts must make is whether a person's deprivation of freedom rises to the same degree associated with a formal arrest. *Coelle v. State*, 332 A.3d 498, 505 (Del. 2024) (quoting *Torres v. State*, 608 A.2d 731, 1992 WL 53406, at *2 (Del. Feb 7, 1992)). Put simply, courts must determine whether the relative environment surrounding a person's restraint on freedom "presents the same inherently coercive pressures as the type of station house questioning present in *Miranda*." *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)).

[64] *Tolson v. State*, 900 A.2d 639, 643-44 (Del. 2006). The functional equivalent of express questioning under *Miranda* has been defined as "any words or actions . . . on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Alexander*, 1994 WL 150862, at *4.

To determine whether a person is in "custody" under *Miranda*, courts have considered the following factors: the interrogation's duration and location; whether the suspect volunteered to be interviewed; whether officers used physical restraints; and if weapons were present.[65] To determine whether a person was "interrogated" under *Miranda*, an objective inquiry must be conducted.[66] Courts ask whether a reasonable person in the suspect's position or a reasonable objective observer would believe an officer's statements or actions were likely to elicit an incriminating response.[67]

The *Miranda* Court "recognized [a suspect's interrogation] in a custodial setting frequently contains "inherent compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."[68] *Miranda* warnings were designed "to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process."[69] If a person is not given *Miranda* warnings before custodial interrogation, "[that person's] answers cannot be introduced into evidence at a subsequent trial to establish [his] guilt."[70]

---

[65] *U.S. v. Wilson*, 100 F.Supp.3d 268, 278 (E.D.N.Y. 2015) (citations omitted).
[66] *U.S. v. Orr*, 707 F.Supp.2d 894, 899 (S.D.N.Y. 2009) (citations omitted); *see DeJesus v. State*, 655 A.2d 1180, 1190 (Del. 1995), *superseded by statute on other grounds*, (emphasizing the objective nature of *Miranda* analysis).
[67] *Orr*, 707 F.Supp.2d at 899 (citations omitted).
[68] *DeJesus*, 655 A.2d at 1189 (citing *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984)).
[69] *Id.* (quoting *Miranda*, 384 U.S. at 469).
[70] *Id.* (citing *Berkemer v. McCarthy*, 468 U.S. 420, 429 (1984)).

The Court first examines whether Robinson was in "custody" under *Miranda* when he made the Statement. When the Statement was made, Robinson had already been arraigned for murder charges.[71] During his hospital stay, Robinson was physically restrained to his bed by handcuffs.[72] Detective Justice, whether at the hospital to "watch" or "supervise" Robinson, was present until DOC arrived because "[Robinson] was [already] "committed" to Howard R. Young Correctional Institute."[73]

Under the totality of the circumstances, Robinson was in custody for *Miranda* purposes. Even if Robinson's physical condition allowed him to leave his hospital bed, handcuffs would prevent him from doing so. If Robinson was freed from his handcuffs, none of the facts suggest Detective Justice would allow Robinson to leave the hospital on his own accord. There is no need to "watch" or "supervise" someone who possesses autonomy to come or go as they please. The Court therefore holds that Robinson's physical restraint, commitment to DOC, and Detective Justice's monitoring collectively show Robinson was in custody under *Miranda*.[74]

---

[71] Def. Mot. *in Limine* ¶ 2; State's Mot. *in Limine* at 2. The arraignment shows Robinson rose to the level of a primary "suspect" in the Delaware State Police's investigation. He was not treated as simply another victim of the collision.

[72] Def. Mot. *in Limine* ¶ 3.

[73] *Id.* ¶ 2; State's Mot. *in Limine* at 2.

[74] The Court also notes that the State, in its Motion *in Limine*, implicitly suggests Robinson was in custody under *Miranda*. State's Mot. *in Limine* at 2. Robinson was never given his *Miranda* warnings before initially being questioned by Delaware State Police pre-surgery. *Id*; Def. Mot. *in Limine* ¶ 3. The State has agreed not to use any information obtained from this specific questioning, presumably because it recognizes that Robinson, at that time, was likely interrogated

14

The Court next examines whether Robinson was "interrogated" under *Miranda*. Robinson voluntarily engaged Detective Justice twice while Detective Justice was in Robinson's room.[75] While Detective Justice never responded to Robinson's first attempt, Detective Justice responded to the second.[76] Per Detective Justice's police report, Detective Justice told Robinson "he was not excited to be in the same room as someone who just killed a mother, daughter, and critically injured another child."[77] Only after this statement does Robinson respond, "I don't give a fuck about dem people."[78]

The Court struggles to see how, as the State suggests, the Statement was "unprompted."[79] Robinson inquired about Detective Justice's personal feelings toward Robinson, and Detective Justice responded by invoking the very crime Robinson is accused of committing. The response was detailed, direct, and accusatory. A reasonable objective person would believe Detective Justice's comment was likely to elicit incriminating statements from Robinson, especially

in custody without receiving *Miranda* warnings. State's Mot. *in Limine* at 2; Def. Mot. *in Limine* ¶ 3. No facts suggest the circumstances changed such that Robinson's custodial status differed between the time he was initially questioned and when the interaction with Detective Justice occurred. This conclusion is supported by the State's response to Robinson's Motion *in Limine,* which appears to contest only whether Detective Justice's interaction with Robinson was considered "interrogation" under *Miranda*. D.I. # 34 ¶¶ 13-15.

[75] State's Mot. *in Limine* at 2.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] State's Reply Br. ¶ 14. While Robinson did initiate the interaction with Detective Justice, that does not affect whether Detective Justice's subsequent comment then prompted Robinson to make the Statement.

because the comment introduced Robinson's allegedly criminal actions into the conversation. The Court therefore finds Robinson was interrogated under *Miranda*.

The State, in arguing Robinson was not under custodial interrogation, relies on the analogous facts present between Robinson's case and *Smallwood v. State*.[80] In *Smallwood*, the defendant was hospitalized after being shot.[81] A police officer, who was previously acquainted with defendant's brother, was assigned to guard defendant at the hospital.[82] While outside the defendant's room, the officer saw defendant motion for him to enter.[83] The defendant then made an incriminating statement to the officer.[84] The Supreme Court of Delaware held that no *Miranda* violation occurred because defendant initiated the conversation and was not interrogated.[85]

While the circumstances in *Smallwood* share similarities with Robinson's case,[86] the State ignores key differentiating details. Both the officer in *Smallwood* and Detective Justice appease the request of the defendant they are tasked with

---

[80] 2002 WL 31883015, at *1 (Del. Dec. 26, 2002); State's Mot. *in Limine* at 3-4; State's Reply Br. ¶ 14.

[81] *Smallwood*, 2002 WL 31883015, at *1 (Del. Dec. 26, 2002).

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] There are several similarities between the *Smallwood* defendant and Robinson. First, both were in the hospital recovering from injuries resulting from an alleged crime. *Id*; Def. Mot. *in Limine* ¶ 2. Second, both were being "watched" or "guarded" at the hospital by a law enforcement officer. *Smallwood*, 2002 WL 31883015, at *1; Def. Mot. *in Limine* ¶ 2. Third, both initiated contact with their respective law enforcement officer and made incriminating statements. *Smallwood*, 2002 WL 31883015, at *1; Def. Mot. *in Limine* ¶ 4.

guarding. The *Smallwood* officer enters the defendant's room while Detective Justice offers a reason for why he might have an attitude with Robinson. But these appeasements are not equivalent actions apt for comparison under *Miranda* analysis.

In *Smallwood*, the Supreme Court held that the officer did not interrogate Defendant because all he did was enter the defendant's room and listen to him. The officer, at the time of entering the defendant's room, had no reason to believe his appeasement would likely elicit an incriminating statement from the defendant. Turning back to Robinson's case, Detective Justice similarly had no reason to believe his entering Robinson's room would illicit an incriminating statement. But that is not the end of the story.

Detective Justice appeased Robinson's request either knowing or having reason to know that his comment to Robinson was reasonably likely to illicit an incriminating statement. Critical to the Court's analysis is not Detective Justice's choice to respond to Robinson, but rather how he responded. Directing a detailed and accusatory statement concerning the events leading to a defendant's arraignment is at the very least distinct from an officer simply entering a defendant's hospital room. Because the actions of the *Smallwood* officer and Detective Justice are drastically different from each other, the reasoning in *Smallwood* does not apply.

The Court finds Robinson was in custodial interrogation when he made the Statement to Detective Justice. Because neither Detective Justice nor any other

17

officer provided Robinson with his *Miranda* warnings before the Statement was made, the Statement is therefore excluded from admission at trail.  The State's Motion *in Limine* with respect to *Miranda* is therefore **DENIED**.

## CONCLUSION

The Court finds the Statement relevant under D.R.E. 401 and not excludable under D.R.E. 403.  Robinson's Motion *in Limine* to Preclude Admission of Defendant's Statement is **DENIED** and the State's Motion to Admit the Statement pursuant to D.R.E. 401 and 403 is **GRANTED**.  The Court, however, finds that the Statement should be excluded from admission pursuant to *Miranda*.  The State's Motion *in Limine* to Admit Defendant's Statement is **DENIED** with respect to *Miranda*.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

18